# 98 DTA 192

TRIBUNAL DE CIRCUITO DE APELACIONES
CIRCUITO REGIONAL V DE PONCE Y AIBONITO

JESUSA MARRERO LUNA
Demandante-Apelada

v.

COOPERATIVA DE AHORRO Y CREDITO DE BARRANQUITAS, SUCURSAL DE OROCOVIS; ABC INSURANCE CO.
Demandados-Apelantes-Terceros Demandantes

EVELYN ARROYO, JAIME R. ARROYO, RAFAEL E. ARROYO, LUIS A. ARROYO Y EDGARDO A. ARROYO
Terceros Demandados

Núm. KLAN-97-01372

-------------------------------------------------------

JESUSA MARRERO LUNA
Demandante-Apelada

v.

COOPERATIVA DE AHORRO Y CREDITO DE BARRANQUITAS, SUCURSAL DE OROCOVIS; ABC INSURANCE CO.
Demandados-Apelados y Terceros-Demandantes

EVELYN ARROYO, JAIME R. ARROYO, RAFAEL E. ARROYO, LUIS A. ARROYO Y EDGARDO A. ARROYO
Terceros Demandados-Apelantes

Núm. KLAN-97-01375

San Juan, Puerto Rico, a 5 de agosto de 1998

Panel integrado por su Presidente, el Juez Negrón Soto

y los Jueces Aponte Jiménez y Segarra Olivero

Negrón Soto, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El Tribunal de Primera Instancia, Sala Superior de Aibonito, declaró con lugar la demanda presentada por la demandante Jesusa Marrero Luna, por concepto de daños y perjuicios, contra la Cooperativa de Ahorro y Crédito de Barranquitas, en lo sucesivo la Cooperativa. También, declaró con lugar la demanda contra tercero instada por la Cooperativa contra los terceros-demandados de epígrafe y declaró no ha lugar la reconvención presentada por estos últimos. A esos efectos, condenó a la Cooperativa al pago de $25,000 por concepto de daños y sufrimientos mentales, $39,323.45 por *"daños económicos"*, más las costas y la suma de $5,000 como honorarios de abogado para la demandante.

Inconformes, apelaron ante nos la Cooperativa en el caso Núm. KLAN-97-01375 y los terceros demandados en el caso Núm. KLAN-97-01372, los cuales fueron consolidados por este Foro apelativo.

Por los fundamentos que expresamos a continuación se modifica la Sentencia apelada para reducir la cuantía concedida a la demandante por concepto de daños y sufrimientos mentales a $10,000.

### I

Jesusa Marrero Luna, en lo sucesivo la demandante, presentó una demanda contra la Cooperativa, Sucursal de Orocovis, y ABC Insurance Co. en el Tribunal de Primera Instancia, Sala Superior de Aibonito. Expuso que se había casado el 16 de junio de 1962 con el señor Rafael De Jesús Arroyo, en adelante Arroyo, de quien se divorció el 14 de octubre de 1992 mediante Sentencia emitida por el Tribunal Superior, Sala de Aibonito, en el caso Civil Núm. BDI-92-0156; que presentó ante dicho Foro un pleito sobre división de sociedad de bienes gananciales en el que las partes suscribieron una

estipulación ■ mediante la cual ella cedió su participación ganancial en dos inmuebles allí descritos a Arroyo por la suma de $40,000; que antes de haber suscrito la misma el Foro de instancia le había ordenado a varias instituciones financieras, entre las cuales se encontraba la Cooperativa, Sucursal de Orocovis, que congelaran las cuentas o certificados que aparecían a nombre de Arroyo; que la Cooperativa certificó que en dicha institución financiera sólo existía una cuenta a nombre de éste por la suma de $2,000 y que dicha cuenta fue la única congelada por la Cooperativa. La demandante añadió que Arroyo falleció el 24 de mayo de 1995 y que el 28 de marzo siguiente ésta había descubierto que la Cooperativa había brindado información falsa al Tribunal y a su representación legal en el pleito de división de gananciales ya que Arroyo tenía en la Cooperativa al momento de la división de la sociedad de bienes gananciales por ellos compuesta por lo menos diez cuentas, habiéndose congelado y expedido certificación sólo en cuanto a una; que por haber sido certificados erróneamente los estados bancarios, fue inducida a error, lo cual le causó perjuicios; que en dichas cuentas se depositó una suma de no menos de $134,000, de los cuales por lo menos el 50% son gananciales. Ésta reclamó la suma de $67,000 como resultado de las actuaciones ilegales de la Cooperativa, $100,000 por concepto de angustias, sufrimientos morales y mentales y $25,000 por concepto de honorarios de abogado.

La Cooperativa presentó su contestación, en la cual levantó como defensa afirmativa que la cuenta de Arroyo que había sido certificada en el pleito de división de gananciales, *supra*, era la única a su nombre al momento de su muerte. Luego, presentó una Demanda Contra Terceros para incluir a los herederos de Arroyo. Alegó, en lo pertinente:

"*2...que la demandante... dejó de percibir una cantidad mayor a la que recibió al no considerarse las cantidades de dinero que habían en las cuentas no congeladas y que estaban a nombre y/o al cuido del Sr. Rafael Arroyo de Jesús...y que...*

*3.[d]e probarse en juicio que la Cooperativa de Ahorro y Crédito de Barranquitas actuó negligentemente al no congelar las cuentas aludidas, la compensación en daños provendría total o parcialmente del dinero en dichas cuentas y que al presente forman parte del caudal de la Sucesión del Sr. Arroyo de Jesús, a saber: Evelyn Arroyo; Jaime R. Arroyo; Rafael E. Arroyo; Luis A. Arroyo; y Edgardo R. Arroyo...*".

El Foro de instancia expidió los emplazamientos solicitados dirigidos a dichos herederos. La demandante solicitó reconsideración, en donde alegó que:

"*1...su reclamación era una bajo el Artículo 1802 del Código Civil de Puerto Rico, 31 L.P.R.A 5141 por haber la Cooperativa, Sucursal de Orocovis, actuado negligentemente al inclumplir con una orden judicial para que se congelaran unos fondos sin que estuviera reclamado un lucro cesante y sin que fuera una acción hereditaria o reclamación de la cuota usufructaria por razón de la muerte de su esposo.*"

Los terceros demandados (Evelyn Arroyo, Jaime R. Arroyo, Rafael E. Arroyo, Luis A. Arroyo y Edgardo R. Arroyo), contestaron la demanda y levantaron como defensas afirmativas que ellos no eran partes indispensables; que la Cooperativa no podía beneficiarse de sus propios actos negligentes; que ésta responde ante los terceros demandados de cualquier suma que tuvieran que satisfacer y que la reclamación estaba prescrita, entre otras. También, presentaron una reconvención. Alegaron que la Cooperativa no había embargado el dinero depositado en las cuentas; que los privaron del uso y disfrute de su propiedad por sobre ocho meses; y que a causa de ello han padecido pérdidas económicas estimadas en $251,000 y angustias y sufrimientos mentales estimados en $100,000. De otra parte, expusieron que la Cooperativa había actuado de manera negligente y culposa al retener sin justa causa los fondos propiedad de los terceros demandados, lo cual constituía un embargo extrajudicial y *ultravires*, que la aseguradora ABC Insurance debía responder por dichos riesgos y que la Cooperativa era responsable por todos los daños económicos, morales y mentales que ellos sufrieron por su negligencia y por el embargo ilegal de los fondos allí depositados. A esos fines, reclamaron la suma de $25,000 por concepto de daños económicos y $100,000 por los daños morales y mentales, más $25,000 como concepto de costas y honorarios de abogado. La Cooperativa contestó la reconvención, sin levantar defensas afirmativas.

Los terceros-demandados solicitaron entonces la desestimación de la demanda contra terceros, alegando que no aducía hechos para sostener su inclusión en el pleito como partes indispensables ya que la Cooperativa no tenía legitimación activa para reclamarle a la sucesión las obligaciones del causante, Arroyo, por lo que debía condenársele al pago de costas y honorarios de abogado. La Cooperativa se opuso. ▮

A solicitud de los terceros demandados el Foro de instancia le ordenó a la Cooperativa consignar los fondos retenidos, los cuales ascendieron a la suma de $52,372.45 producto de las cuentas en controversia, a saber: número 901195, 903213, 902356, 902309, 902612, 902833, 16549 y 10651.

Luego de celebrada la vista en su fondo el Tribunal de Primera Instancia, Sala Superior de Aibonito, dictó Sentencia el 6 de octubre de 1997, la cual fue notificada el 18 de noviembre siguiente, ordenándole a la Cooperativa a pagar a la demandante la suma de $39,323.45 por concepto de daños económicos, $25,000 por daños y sufrimientos mentales más la cuantía de $5,000 como honorarios de abogado. Además, le ordenó pagarle a los terceros demandados la suma de $13,049 del remanente de activos dejados por Arroyo y declaró no ha lugar la reconvención presentada por éstos. Consignó las siguientes determinaciones de hechos:

"*1. La parte Demandante se casó con el finado Rafael Arroyo de Jesús el 16 de junio de 1962.*

*2. Estuvo casada con el Sr. Arroyo de Jesús por espacio de 30 años hasta su divorcio el 14 de octubre de 1992 a tenor con sentencia emitida en dicha fecha por el Honorable Juez Fernando Campoamor Redín en el caso Civil Núm. BDI-92-0156.*

*3. La Sociedad Legal de Gananciales entre la demandante y el finado Arroyo de Jesús se liquidó el 10 de noviembre de 1993 a través de sentencia emitida en dicha fecha por el Honorable Juez Bruno Cortés Trigo donde acogió la estipulación radicada por las partes el 9 de noviembre de 1993 en el Caso Civil Núm. BBAC-92-0158.*

*4. En este pleito, antes de someterse la estipulación, el Honorable Juez Aurelio Gracia Morales emitió una orden el 29 de marzo de 1993 donde ordenaba a varias instituciones financieras entre ellas la Cooperativa a que informara y congelara todas las cuentas y/o certificados que aparecían a nombre del Sr. Rafael Arroyo de Jesús.*

*5. Como consecuencia de esta orden la Cooperativa certificó el 20 de mayo de 1993 que en esa institución financiera sólo existía una (1) cuenta a nombre del Sr. Rafael Arroyo de Jesús con un balance menor de $2,000.00 Esta fue la única cuenta de la Cooperativa que apareció computada en la estipulación acogida por el Tribunal en el procedimiento de la liquidación de bienes gananciales.*

*6. El Sr. Rafael Arroyo de Jesús se enfermó el 26 de marzo de 1995 y falleció el 24 de mayo de 1995.*

*7. Mientras éste convalecía enfermo, la demandante acompañada de dos (2) de sus hijos acudió a la residencia del Sr. Arroyo de Jesús para obtener ciertos objetos que éste necesitaba mientras convalecía en el hospital. Allí descubrieron entre los objetos de su ex-esposo la existencia de varias libretas de depósitos de la Cooperativa a nombre del Sr. Arroyo de Jesús.*

*8. A partir de dicho momento la Demandante se propuso obtener información con respecto a estas cuentas que ella desconocía existían al momento que firmó la estipulación. Así descubrió que en la Cooperativa el Sr. Arroyo de Jesús tenía las siguientes diez (10) cuentas y no como notificó al Tribunal la Cooperativa...*

*9. La única razón brindada por la Cooperativa para no haber informado apropiadamente al Tribunal de las diez (10) cuentas que existían a nombre del Sr. Arroyo de Jesús fue que al momento de diligenciarse la orden del Tribunal la Cooperativa se encontraba realizando una conversión de sistemas de cuentas a un sistema computarizado por lo que la búsqueda en el sistema erróneamente arrojó la existencia de una cuenta y no de las diez (10) que efectivamente existían en dicho momento en la Cooperativa.*

*10. Las partes estipularon que el balance de las cuentas principales del Sr. Arroyo de Jesús ascendía al 29 de marzo de 1993 a la cantidad de $78,646.89.*

*11. A esa fecha, 29 de marzo de 1993, la Cooperativa debió notificar la existencia de las cuentas propiedad del Sr. Arroyo de Jesús y congelar las mismas a tenor con la orden emitida en el caso Civil Núm. BBAC-92-0158. La Cooperativa, sin embargo, no lo hizo permitiendo que en dichas cuentas se continuaron efectuando depósitos y retiros."*

Ante nos, los terceros demandados sostienen (Núm. KLAN-97-01375) que erró el Tribunal de Primera Instancia, Sala Superior de Aibonito, al:

*"A....no desestimar la demanda contra tercero radicada por la Cooperativa;*

*B....determinar que a tenor con el derecho sucesoral los terceros demandados responden a la demandante por la mitad de los fondos que existían en la cuenta del finado Sr. Arroyo de Jesús a la fecha en que se dividió la sociedad legal de gananciales entre éste y la demandante;*

*C....asumir... jurisdicción para alterar, como en efecto hizo la sentencia de división de bienes dictada el 10 de noviembre de 1993 por el Honorable Juez Bruno Cortés Trigo;*

*D....declarar no ha lugar la reconvención incoada aun cuando los terceros demandados adecuadamente establecieron que sufrieron daños como consecuencia de las actuaciones ilegales, culposas y/o intencionales de la Cooperativa;*

*E....no determinar que la Cooperativa actuó temerariamente al demandar a los terceros demandados aun cuando conocía o debía conocer que su reclamación carecía de mérito alguno."*

De otro lado, la Cooperativa (Núm. KLAN-97-01372) imputa como errores al Tribunal de Primera Instancia el haber adjudicado la suma de $25,000.00 a la demandante por concepto de daños y sufrimientos mentales (Error 1) e imponerle $5,000.00 por concepto de honorarios de abogado (Error 2).

Consolidados estos recursos, las partes presentaron una exposición narrativa estipulada de la prueba. Estudiados y considerados los alegatos de las partes estamos preparados para resolver.

**II**

En primer lugar, consideremos los primeros tres errores (Errores A, B y C del Núm. KLAN-97-01375) alegados por los terceros demandados, quienes argumentan que la Cooperativa carecía de legitimación activa para traerlos al pleito como una parte; que ellos no son responsables ante la demandante por los fondos que existían en la cuenta de Arroyo y que el Tribunal de Primera Instancia no tenía jurisdicción para alterar la Sentencia de división de bienes emitida el 10 de noviembre de 1993 por ese mismo Foro, por ser cosa juzgada.

*"La legitimación activa o simplemente legitimación es la razón jurídica que asiste a la parte actora para comparecer ante el tribunal y obtener una sentencia vinculante."* Hernández Colón, *Práctica Jurídica de Puerto Rico, Derecho Procesal Civil,* San Juan, Puerto Rico, Michie of Puerto Rico, Inc., 1997, sec. 1002, pág. 89. Esta es exigida en todo proceso. *Ibid,* pág. 90. A esos efectos, Hernández Colón, *Ibid.,* pág. 90, señala que:

*"[e]l concepto de parte realmente interesada "es un medio para identificar a la persona que posee el derecho que se pretende proteger". Este término nos obliga a examinar "si el demandante tiene un interés significativo en la acción que se ha presentado". El concepto de parte realmente interesada va identificado con el actor o demandante. La capacidad para comparecer, por su parte, se concibe como el derecho personal de una parte a litigar ante un tribunal. La capacidad no está limitada únicamente a los demandantes ni depende del carácter de la reclamación."*

De otro lado, la Regla 12.1 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, dispone que:

*"En cualquier momento después de comenzado el pleito, el demandado podrá, como demandante contra tercero, notificar un emplazamiento y demanda a una persona que no sea parte en el pleito y (1) que le sea o pueda serle responsable al demandado por toda o parte de la reclamación del demandante, o (2) que sea o pueda serle responsable exclusivamente al demandante."*

El propósito de esta Regla es *"establecer un mecanismo"* para facilitar la resolución pronta y económica de pleitos múltiples que puedan surgir de unos mismos hechos. La regla *"no crea, extiende o limita derechos sustantivos. Lo que hace es acelerar su dilucidación."* Cuevas Segarra, *Práctica Procesal Puertorriqueña, Procedimiento Civil,* **Publicaciones J.T.S.**, págs. 73-74.

Este es el vehículo adecuado, dentro de nuestro ordenamiento procesal civil, para traer ante el tribunal a cualquier causante del daño que no hubiese sido originalmente incluido como parte por el perjudicado. *González v. ELA,* 99 D.P.R. 397, 404 (1970) (Pérez); *Serralta v. Martínez Rivera,* 97 D.P.R. 466, 472 (1969) (Santana); *Security Ins. Co. v. Tribunal Superior,* 101 D.P.R. 191 (1973) (Martínez). Cuevas Segarra, *ibid,* pág. 75.

La Cooperativa en cumplimiento con la Regla 12.1 de las de Procedimiento Civil, *supra,* trajo como terceros demandados a los herederos de Arroyo para que le respondieran a la demandante por los fondos del capital ganancial que ésta dejó de percibir y que Arroyo tenía en varias cuentas en la Cooperativa que no fueron considerados por la demandante ni por el Foro de instancia al firmarse y aprobarse la estipulación de división de bienes entre las partes, ya que ni Arroyo ni la Cooperativa habían informado de su existencia al Tribunal de Primera Instancia, a pesar de la orden emitida por dicho Foro a esos efectos, y ese dinero. Dicha suma le era adeudada por Arroyo a la demandante.

Los terceros demandados, por ser herederos de Arroyo, son responsables ante la demandante por la suma dejada de percibir por ésta o cuando menos tenían un interés legítimo que proteger. *"Los derechos de la sucesión █ de una persona se transmiten desde el momento de su muerte".* Artículo 603 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 2085. *Esta incluye no sólo "los derechos y obligaciones del difunto, tales como existían al tiempo de su muerte, sino que también comprende los bienes que correspondan a dicha sucesión después de abierta y las cargas y obligaciones que le fueren inherentes."* Artículo 601, *supra,* 31 L.P.R.A sec. 2083.

No obstante, alegan los terceros demandados, que la sentencia decretando la división de bienes de la sociedad de bienes gananciales compuesta por la demandante y Arroyo emitida el 10 de noviembre de 1993, operaba como cosa juzgada y que por lo tanto el Tribunal de Primera Instancia carecía de jurisdicción para considerar los pleitos de epígrafe. No le asiste la razón.

La doctrina de cosa juzgada por ser de estirpe civilista está estatuida en el Artículo 1204 del Código Civil, 31 L.P.R.A. sec. 3343, el cual dispone que:

*"[p]ara que la presunción de cosa juzgada surta efecto en otro juicio, es necesario que entre el caso resuelto por la sentencia y aquel en que ésta sea invocada, concurra la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron."*

La reclamación de la demandante sobre los fondos de las cuentas que no fueron considerados en la división de bienes gananciales no es cosa juzgada ya que se desconocía de su existencia. Estos no fueron considerados por el Tribunal de Primera Instancia al emitir su Sentencia. Los fondos de dichas cuentas no fueron certificados por la Cooperativa como existentes ante dicho Foro. Tampoco Arroyo reveló su existencia. En atención a ello dichos fondos se reputan gananciales. Era deber de los terceros demandados probar que no lo eran o que su adjudicación fue parte de la Sentencia o de la estipulación sobre la división de bienes de la sociedad de bienes gananciales habida entre la demandante y Arroyo.

Considerando lo antes mencionado concluimos que no erró el Tribunal de Primera Instancia al permitir la demanda contra terceros interpuesta por la Cooperativa y al ordenar el pago de la suma que se le adeudaba a la demandante por concepto de la división de la sociedad de bienes gananciales de las cuentas que Arroyo tenía en la Cooperativa.

## III

Consideremos, en segundo lugar, si erró el Tribunal de Primera Instancia al declarar no ha lugar la reconvención presentada por los terceros demandados, quienes alegan haber probado que sufrieron daños a consecuencia de las actuaciones *"ilegales, culposas y/o intencionales"* de la Cooperativa, (Error D). El Art. 1802 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 5141, establece que:

*"[e]l que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado...".*

Este precepto se refiere a todo acto cometido sin la existencia previa de una relación contractual entre las partes. El profesor Carlos J. Irizarry Yunqué, en su libro titulado *Responsabilidad Civil Extracontractual: Un estudio basado en las Decisiones del Tribunal Supremo de Puerto Rico*, Facultad de Derecho de la Universidad Interamericana de Puerto Rico, San Juan, 1995, pág. 16, indica que las obligaciones son exigibles civilmente en dos ocasiones particulares, las voluntarias, que se originan en contratos y cuasicontratos, y *"las involuntarias, llamadas extracontractuales, es decir, que no tienen su fuente en vínculo contractual alguno"*.

La responsabilidad extracontractual es producto de la negligencia o de la omisión en el cumplimiento de un deber jurídico de actuar. No obstante, el perjudicado no puede solicitar ser indemnizado del daño hasta demostrar la existencia del mismo, tomando en consideración, en primer lugar, que ese daño es uno real; en segundo lugar, la existencia de un nexo causal entre el daño y la acción u omisión es uno culposo o negligente, *Bonilla v. Chardón*, 118 D.P.R. 599 (1987). A esos efectos determinemos si existió un daño real. Alegan los terceros demandados que el hecho de que la Cooperativa no les hubiese entregado los fondos depositados en las cuentas les dificultaron su vida económica y provocaron desavenencias entre éstos y la demandante limitando sustancialmente su relación familiar. Dicha prueba no fue creída por el Tribunal de Primera Instancia. A esos efectos, dicho Foro determinó: *"[r]especto a la reclamación de daños y perjuicios radicada por los terceros demandados vía reconvención, la prueba testifical demostró que los problemas, desavenencias y roces familiares que estaban experimentando durante el pleito entre ellos y la demandante surgieron en base a la radicación de la demanda por la Sra. Jesusa Marrero Luna, de manera que los daños, alegados fueron el producto de sus propias actitudes."*

Es sabido que los Tribunales no intervendrán en la apreciación de la prueba, salvo que se demuestre la existencia de pasión, prejuicio, parcialidad o error manifiesto. *López Vicil v. ITT Intermedia*, **97 J.T.S. 42**, pág. 838. No habiéndose probado su existencia, procede sostener al Foro de instancia en dicho aspecto. A esos efectos, al no haberse podido demostrar la existencia del daño no es necesario que entremos a considerar si la actuación de la Cooperativa fue una negligente. En fin, concluimos que dicho error no fue cometido.

## IV

Consideremos si erró el Tribunal de Primera Instancia al adjudicarle la suma de $25,000 a la demandante por concepto de daños y sufrimientos mentales. (Error 1 planteado por la Cooperativa).

Los daños se clasifican en generales o especiales. Los primeros son aquellos cuya evaluación depende de la discreción del Tribunal ya que no pueden probarse matemáticamente y los segundos, por tratarse de pérdidas o gastos incurridos, son los que pueden ser calculados de una manera más exacta. Estos últimos deben ser alegados específicamente en la demanda, pues si no se renuncian. Carlos J. Irizarry Yunqué, *ibid*, pág. 346.

La estimación y valoración de los daños *"es una tarea difícil y angustiosa, no existiendo un sistema mecánico que nos permita llegar a un resultado exacto en relación con el cual todas las partes queden satisfechas y complacidas."*

Véase, *Rodríguez Cancel v. A.E.E.*, 116 D.P.R. 443, 451 (1985); *Urrutia v. A.A.A.*, 103 D.P.R. 643 (1975). Al llevar a cabo esta tarea, los tribunales de instancia están en mejor posición que los foros apelativos para evaluar la situación pues tienen contacto directo con la prueba y, por lo tanto, estos últimos no intervendrán con la decisión que emitan los primeros, a menos que las cuantías otorgadas

sean exageradamente altas o ridículamente bajas. *Torres Solis v. A.E.E.*, **94 J.T.S. 89,** pág. 12039; *Sanabria v. E.L.A.*, **93 J.T.S. 24**, pág. 10411; *Rodríguez Cancel v. A.E.E., supra; Urrutia v. A.A.A., supra.* Por esta razón, es que la persona que solicita la modificación de la cuantía de los daños tiene que demostrar la existencia de circunstancias que la justifiquen. *Rodríguez Cancel v. A.E.E., supra; Canales Velázquez v. Rosario Quiles*, 107 D.P.R. 757 (1978).

En cuanto a la determinación de daños, María V. González de Molinelli, *Los Efectos de la Inflación en la Compensación de Daños*, 3 Forum 2, 13-14 (1987) expone, al citar al Doctor Jenaro Baquero, lo siguiente:

*"La determinación de la compensación monetaria justa y razonable por daños y lesiones personales es un asunto sumamente difícil y controversial. El dolor y el sufrimiento no son objetos de comercio. Por tanto, no tienen precio medible en términos de dinero. En casos de esta naturaleza no hay regla exacta aplicable ni base para su cálculo matemático. Lo esencial es que la existencia del daño no sea incierta o especulativa. La cuantía, hasta donde sea susceptible de ser estimada en dinero, debe ser aquella suma que razonablemente compense al demandante, por todos los daños sufridos, sujeto a las limitaciones que imponen las doctrinas de la certidumbre y de las consecuencias naturales y próximas de la conducta del demandado. De ordinario se incluye compensación por el dolor y el sufrimiento, por la pérdida de tiempo, tratamiento y cuidados médicos, por el lucro cesante y por cualquier lesión o incapacidad resultante. Entre los factores a considerar figuran la edad, el sexo y la salud y condición física de la persona afectada y también la duración o permanencia de la lesión e incapacidad y la esperanza de vida del lesionado. Cuando la incapacidad es permanente la compensación debe indemnizar por los sufrimientos físicos y mentales, tanto pasados como futuros, y por el menoscabo en el potencial de ingreso futuro, conjuntamente con los gastos médicos y otros gastos especiales pasados, presentes y anticipables en el futuro. En caso de muerte hay que considerar la lesión resultante en el patrimonio económico, presente y futuro, de la sucesión del fallecido."*

En atención a esto, estableció nuestro más alto Foro en *Escobar Galarza v. Banuchi Pons*, 114 D.P.R. 138, 148 (1983) que para facilitar la tarea de valoración de daños se debe utilizar como punto de partida:

*"[l]a valoración que en casos "similares" este Tribunal ha considerado adecuada en el pasado; la razón principal de ello, siendo como es claro que los sufrimientos y angustias que experimenta una persona en determinado momento, digamos, por la muerte de un ser querido y/o la fractura de una pierna no varían con el transcurso de los años."*

No obstante, en *Elba A.B.M. v. U.P.R.*, 125 D.P.R. 294, 327 (1990), nuestro Tribunal Supremo dispuso lo siguiente:

*"En Rodríguez Cancel v. A.E.E., supra, pág. 452, recalcamos que, "[c]omo sabemos, no hay dos casos exactamente iguales; cada caso se distingue por sus propias y varíadas circunstancias. Es por ello que -a pesar de que es aconsejable que los tribunales de instancia utilicen como guía o punto de partida las cuantías concedidas por este Tribunal en casos "similares" anteriores- la decisión que se emita en un caso en específico en relación con esta materia no puede ser considerada como precedente obligatorio para otro caso. Vda. De Silva v. Auxilio Mutuo, 100 D.P.R. 30 (1971); Baralt v. Báez, 78 D.P.R. 123 (1955)".*

Es sabido que dichas cantidades deben ser actualizadas ▇ tomando en consideración la inflación. A esos efectos, en *Escobar Galarza v. Banuchi Pons, supra,* pág. 148, se dice que:

*"Estamos conscientes, sin embargo, del hecho de que si bien es cierto lo anteriormente expresado, dichas pasadas valorizaciones, en justicia tendrían que ser "actualizadas"; ello debido a que el "valor" del dinero hoy día no es el mismo de hace digamos cinco o diez años atrás por razón del alza en el costo de la vida que nuestra sociedad ha venido sufriendo durante los últimos años. Véase: Rojas v. Maldonado, 68 D.P.R. 818 (1948)."*

Por último, se señala en este caso, de *Escobar Galarza, supra,* que se debe considerar "... *la forma*

*y manera como ocurrieron los hechos y las circunstancias especiales presentes en el caso específico que está considerando el tribunal".*

Procedamos ahora a efectuar el análisis correspondiente. En el caso de marras, el Tribunal de Primera Instancia concluyó que la Cooperativa había actuado de manera negligente al *"tramitar y responder erróneamente la orden dictada por el Tribunal, por vía del Honorable Juez Aurelio Gracia Morales, el 29 de marzo de 1993."* Sentencia apelada, pág. 5. Ello le causó daños a la demandante, quien dejó de recobrar la porción que le correspondía del dinero depositado en la Cooperativa y al no tener acceso a estos fondos dificultó su vida como mujer, y madre, recién divorciada, tuvo que arreglárselas con muy poco dinero para valérselas por sí misma y ayudar a sus hijos. Todo esto mientras continuaba pagando las obligaciones personales que retuvo luego del divorcio, lo cual afectó su vida personal y familiar causándole las angustias y sufrimientos mentales. Sentencia apelada, pág. 6.

Por dichos sufrimientos y angustias mentales el Tribunal de Primera Instancia le impuso a la Cooperativa el pago de $25,000. Alega la Cooperativa que dicha cuantía no procedía ya que los daños no fueron probados o que la misma era *"exageradamente alta"*.

En atención a las normas de derecho arriba mencionadas es menester destacar que ante los hechos del caso de marras quedó evidentemente demostrada la existencia de un daño causado a consecuencia de la negligencia de la Cooperativa, quien de hecho levantó como única defensa a su actuación el que la Cooperativa se encontraba en esos momentos realizando una conversión de su sistema de cuentas a uno computarizado, por lo que la búsqueda en el sistema sólo reflejó la existencia de una cuenta. Ello trajo como consecuencia que en el pleito sobre la división de la sociedad de bienes gananciales las otras cuentas no fueran consideradas, causándole daños a la demandante. No obstante, debemos considerar si la cuantía concedida es una *"exageradamente alta"*.

No hemos encontrado casos con una situación de hechos similar a la de marras. No obstante, a modo de comparación consideremos casos relativos al daño moral causado por violaciones al derecho de la propiedad. Estas sumas fluctúan por concepto de embargo ilegal de la propiedad, desde $300 en *Rivera v. Rossi*, 64 D.P.R. 718 (1945) a $31,000, suma concedida en *Acosta & Rodas, Inc. v. PRAICO*, 112 D.P.R. 583 (1982). Véase: A.J. Amadeo Murga, *El Valor de los Daños en la Responsabilidad Civil*, San Juan, Puerto Rico, Editorial Esmaco, 1997, to. II, pág. 1155. En cuanto a los daños morales concedidos por daños a la vivienda éstos fluctúan entre $300 en *González v. Centex Const. Co*, 103 D.P.R. 82 (1974), a $7,000 en *Freytes v. Longo de Puerto Rico*, RE-89 18 352. *Ibid*, págs. 1171-1177. Ciertamente entendemos que los daños por concepto de daños y sufrimientos mentales en el caso de autos -aunque más severos que los contemplados en estos últimos casos- al tomar en consideración las circunstancias existentes donde meramente se alude a conclusiones, claramente resultan en que su valoración en $25,000 sea una exageradamente alta, por lo que la misma debe ser modificada a $10,000.

## V

Procedamos a considerar si erró el Tribunal de Primera Instancia al no determinar que la Cooperativa fue temeraria al demandar a los terceros demandados (Error E).

La Regla 44.1 (d) de las de Procedimiento Civil, 32 L.P.R.A Ap. III, dispone que:

*"[e]n caso que cualquier parte haya procedido con temeridad, el tribunal deberá imponerle en su sentencia el pago de una suma por concepto de honorarios de abogado."*

En *Fernández v. San Juan Cement Co., Inc.*, 118 D.P.R. 713, 718-719 (1987), se resolvió que:

*"[e]l propósito principal de autorizar la imposición de honorarios de abogado en casos de temeridad, es la de establecer una penalidad a un litigante perdidoso que por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte innecesariamente, a asumir las molestias, gastos, trabajo e inconveniencias de un pleito, Soto v. Lugo, 76 D.P.R. 444 (1954). Hemos señalado que la acción que amerita la condena de honorarios de abogado es cualquiera que haga necesario un pleito que se pudo evitar, McCormick v. Vallés, 55*

*D.P.R. 226, 233 (1930); que lo prolongue innecesariamente, Stella v. Bonilla, supra; Ortiz v. Viera, 59 D.P.R. 358 (1941), o que produzca la necesidad de que otra parte incurra en gestiones evitables, San Antonio v. Jiménez & Fernández, Sucs., 63 D.P.R. 215, 220 (1944). Como ejemplo hemos resuelto que existe temeridad si el demandado contesta una demanda y niega su responsabilidad total, aunque la acepte posteriormente, Rodríguez Cancel v. A.E.E., 116 D.P.R. 443 (1985); si se defiende injustificadamente de la acción, Montañez Cruz v. Metropolitan Cons. Corp., supra; si la parte demandada en efecto cree que la cantidad reclamada es exagerada y esa es la única razón que tiene para oponerse a las peticiones del demandante y no admite francamente su responsabilidad limitando la controversia a la fijación de la cuantía a ser concedida." Mercado v. American Railroad Co., 61 D.P.R. 228 (1943); Reyes v. Aponte, 60 D.P.R. 890 (1942). Como dijimos en Pérez Cruz v. Hosp. La Concepción, 115 D.P.R. 721, 739-740 (1984), si "[s]e arriesgó a litigar un caso del que se desprendía prima facie la negligencia... Debe asumir, pues, la responsabilidad por sus actos." Negar un hecho que le consta es cierto al que hace la alegación también constituye temeridad." Abréu Román v. Rivera Santos, 92 D.P.R. 325 (1965)".* (Notas al calce omitidas).

Además, ha sido resuelto que:

*"[n]o incurre en temeridad una parte que litiga una cuestión que tiene acogida y adjudica por primera vez en la jurisprudencia patria, Brea v. Pardo, 113 D.P.R. 217, 226 (1982), ni cuando el caso es complejo en el cual se hacen planteamientos novedosos." Elba A.B.M. v. U.P.R., 125 D.P.R. 294, 330 (1990).*

Dicha determinación depende de la discreción del Tribunal sentenciador. *Raoca Plumbing v. Trans World,* 114 D.P.R. 464 (1983).

Una vez se determina tal temeridad, el Tribunal tiene la obligación de imponer en la sentencia el pago de una suma por concepto de honorarios de abogado. *Vega v. Luna Torres,* 126 D.P.R. 370 (1990). Como se dijo en *Santos Bermúdez v. Texaco P.R. Inc.,* 123 D.P.R. 351, 356-357 (1989):

*"[a]l fijar la cuantía de honorarios de abogado [el tribunal] tomar[á] en consideración [factores tales como (1) el grado de temeridad que ha existido [; (2)] la naturaleza del procedimiento [; (3)] los esfuerzos y actividad profesional que haya tenido que desplegarse [, y (4)] la habilidad y reputación de los abogados, Bernier, op. cit., pág. 33. Es decir [s]u cuantificación no tiene que coincidir matemáticamente con el valor real de los servicios prestados o pagados, sino con aquella suma que en consideración al grado de temeridad y demás circunstancias el tribunal concluye que representa razonablemente el valor de esos servicios." Asociación de Condómines v. Trelles Reyes,* 120 D.P.R. 574, 579 (1988).

Ciertamente la Cooperativa no fue temeraria al incoar una demanda necesaria contra los terceros demandados ni al no hacerle entrega a éstos de esos fondos de las cuentas en controversia, contrario a su requerimiento indebido, hasta consignarlos en el Tribunal a tenor con una orden emitida por dicho Foro a solicitud de ellos mismos, los terceros demandados. Quedó claramente establecido que los fondos de estas cuentas pertenecían a Arroyo, el causante, y la demandante y no habían sido consideradas en la división de la sociedad de bienes gananciales de éstos. Reputándose gananciales, dichos fondos se le adeudaban a la demandante, teniendo que responder por los mismos Arroyo y luego de su muerte, los herederos. En atención a ello concluimos que dicho error no fue cometido.

## VI

Por último, alega la Cooperativa que erró el Tribunal al imponerle la suma de $5,000 por concepto de honorarios de abogado a favor de la demandante. (Error 2). A esos efectos, expresa que su *"único pecado"*... fue negar responsabilidad en la *"Contestación a la Demanda".* Alegato del apelante, pág. 10 (Núm. KLAN-97-01372). También, sostuvo que durante el pleito existió una discrepancia honesta en cuanto a cuál era el derecho aplicable.

Considerando la naturaleza del caso ante nos, en el cual se incluyeron unos demandados contra terceros, quienes presentaron una reconvención, la complejidad del mismo y el grado de temeridad con que actuó la Cooperativa al no aceptar su responsabilidad o negligencia en la contestación a la demanda y esperar la orden del Tribunal para consignar el dinero producto de las cuentas de Arroyo-

concluimos que la suma impuesta por concepto de honorarios de abogado a la Cooperativa no fue una que amerite ser modificada, sustituyendo este Foro apelativo el criterio del juez de instancia, quien precidió todo el trámite procesal que llegó hasta la celebración de un juicio plenario.

### VII

En atención a lo antes mencionado se modifica la Sentencia apelada para reducir la cuantía concedida a la demandante por concepto de daños y sufrimientos mentales a $10,000 y así modificada se confirma.

Lo acordó el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

### ESCOLIOS 98 DTA 192

**1.** La Estipulación entre la demandante, y Arroyo, en el pleito sobre división de Sociedad Legal de Gananciales, B-AC92-0158, establecía que:

*"1. [l]a parte demandante [Jesusa Marrero Luna] cedió todos sus derechos y acciones en favor de la parte demandada [Rafael Arroyo de Jesús] sobre las siguientes propiedades, por la cantidad de $40,000.00... y que*

*3. [1]a parte demandante recibió de manos de la parte demandada la cantidad de $40,000.00."*

**2.** En su escrito la Cooperativa expuso que la demandante estaba reclamando ante dicho Foro una suma de dinero que le hubiese correspondido en la división de bienes de la sociedad de ganaciales compuesta por ella y Arroyo si se hubiese tomado en consideración el dinero de todas las cuentas de este último, existentes en la Cooperativa; que dicha obligación subsistió y al fallecer Arroyo le fue transmitida a sus herederos, quienes tienen que responder por lo reclamado, independientemente de la negligencia de la Cooperativa, con el dinero proveniente de las mismas y que en atención a ello los herederos de Arroyo son partes indispensables en el pleito. El Tribunal dispuso que lo aquí planteado se vería como parte del juicio en su fondo.

**3.** *"La sucesión significa también las propiedades, derechos y cargas que una persona deja después de su muerte, ora la propiedad exceda a las cargas, ora las cargas excedan a la propiedad, o bien si dicha persona ha dejado solamente cargas y ninguna propiedad."* Artículo 600, *supra*, 31 L.P.R.A sec. 2082.

**4.** Para actualizar las valorizaciones de los daños morales efectuados en casos similares por el Tribunal Supremo en años anteriores al 1984, es necesario multiplicar la cuantía dada en el caso anterior por el valor del dólar del año en que el mismo fue resuelto en relación al valor del dólar del año 1984, ya que ese es el utilizado como base para fijar el valor del dólar en las tablas de Poder Adquisitivo del Dólar del Consumidor para Todas las Familias en Puerto Rico. Luego, se procede a dividir dicha cuantía entre el valor del dólar equivalente al año al cual se quiere actualizar la suma concedida por concepto de daños.

Por otro lado, para actualizar la cuantía concedida al valor del dólar en años posteriores al 1984, procede dividir dicha cuantía entre el valor del dólar del año concernido utilizando como base la tabla antes citada. *Sanabria v. E.L.A., supra; Rodríguez Cancel v. A.E.E., supra, Escobar Galarza v. Banuchi Pons, supra; Velázquez Ortiz v. U.P.R.,* 128 D.P.R. 234 (1991).