TERESA VEGA y OTROS, demandantes y recurrentes, *v.* FAUSTINO LUNA TORRES y OTROS, demandados y recurridos.

*Número:* RE-89-481     *Resuelto:* 3 de mayo de 1990

*Juan Lorenzo Rodríguez Quesada,* de la *Clínica de Asistencia Legal de la Escuela de Derecho de la Universidad de Puerto Rico,* abogado de los recurrentes; los recurridos no comparecieron.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

Aunque parezca una paradoja, la prestación no remunerada de servicios legales a personas indigentes o de escasos recursos económicos dista mucho de ser gratuita. En ocasiones, será el Estado —con aportaciones de la Asamblea Legislativa o fondos federales— por conducto de la Sociedad para Asistencia Legal, la Corporación de Servicios Legales o la Oficina Legal de Santurce,

Inc., el que los sufraga. En otras ocasiones la contribución vendrá de profesores y estudiantes[1] del mundo académico a través de las clínicas de asistencia legal de las distintas facultades de Derecho y el financiamiento de las universidades del país y, finalmente, provendrá del profesional en la práctica privada designado como abogado de oficio o por estar adscrito a uno de los programas Pro Bono.

Independientemente de su origen, el elemento común es el talento y la experiencia forense puesta al servicio de los menesterosos. Si recordamos que nuestra sociedad elevó a rango constitucional los principios de dignidad e igualdad de todos, la cuestión procesal ante nos —íntimamente relacionada con la realidad expuesta— sobrepasa los intereses inmediatos de las partes. Debemos decidir si proceden los honorarios de abogado en una acción promovida por la Clínica de Asistencia Legal de la Escuela de Derecho de la Universidad de Puerto Rico a nombre de unos litigantes pobres que prevalecieron en sus reclamos en ocasión del tribunal haberle concedido intereses por temeridad según la Regla 44.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III. El Tribunal Superior, Sala de San Juan (Hon. Pedro López Oliver, Juez), resolvió en la negativa. El planteamiento conlleva, además, determinar el destino final de tales honorarios. Se impone un poco de historia procesal.

I

El criterio de culpa o temeridad de la parte perdidosa —fundamental en la concesión de tales honorarios— es materia que afloró en nuestra jurisdicción desde principios de siglo. *Rosado v. Hernández et al.*, 17 D.P.R. 617, 621 (1911); *Martínez v. Padilla*, 19 D.P.R. 582, 585 (1913); *Vivas et al. v. Hernaiz, Targa & Co. et al.*, 24 D.P.R. 836, 840 (1917). El principio dio génesis a una línea jurisprudencial interpretativa del Art. 327 del Código de Enjuiciamiento Civil, 32 L.P.R.A. ant. sec. 1461. Este precepto

---

[1] Véase *Andino Nieves v. A.A.A.*, 123 D.P.R. 712 (1989).

visualizaba los honorarios como *costas* del pleito a la parte vencedora. Bajo esa visión era necesario un memorándum de costas que incluyese, en detalle, los honorarios de abogado en los que se había incurrido.[2] Como corolario, en los casos *Casals v. Rosario,* 34 D.P.R. 77 (1925); *García v. Aguayo,* 46 D.P.R. 340 (1934); *Cabassa v. Reyes,* 27 D.P.R. 360 (1919), y *Ramírez v. American Railroad Company,* 28 D.P.R. 181 (1920), indicamos que los honorarios correspondían a la parte y no al abogado.

Con el tiempo, conjuntamente con su carácter remunerativo, afloró el elemento disuasivo-punitivo. Para 1924, en *Fragoso v. Marxuach,* 32 D.P.R. 690 (1924), aludimos a la situación en los tribunales de instancia donde se concedían altas cantidades por honorarios de abogado. Recalcamos allí la amplia discreción de los tribunales y la necesidad de que su ejercicio fuera ponderado a la luz de las circunstancias de cada caso.

Este proceso casuístico culminó con la redacción de la Regla 44.4(d) de Procedimiento Civil de *1958,* similar a la Regla 44.1(d) vigente desde 1979. Se dispuso que "[e]n caso que cualquier parte haya procedido con temeridad, el tribunal deberá imponerle en su sentencia el pago de una suma por concepto de honorarios de abogado". 32 L.P.R.A. Ap. III, R. 44.1(d). Se descartó, entonces, el requisito de someter un memorándum donde éstos se hiciesen constar y se fortaleció su carácter mandatorio ante la conducta temeraria de un litigante. *Sucn. Arroyo v. Municipio,* 81 D.P.R. 434, 437–438 (1959).

A su amparo, recientemente en *Fernández v. San Juan Cement Co., Inc.,* 118 D.P.R. 713, 717 (1987), reiteramos la norma de que su imposición es discrecional pero "cuando una parte ha procedido con temeridad, el tribunal *deberá* imponerle en su

---

[2] En lo pertinente, el Art. 339 establecía:

"Las costas se reclamarán por la parte a la cual hayan sido concedidas, entregando al secretario de la corte en que se hubiere dictado sentencia en primera instancia un memorándum de dichas costas, de los desembolsos necesariamente hechos por el reclamante en el pleito y *del montante de los honorarios de su letrado, la veracidad del cual memorándum deberá ser jurada por la parte o su abogado....*" (Énfasis suplido.) *Código de Enjuiciamiento Civil de Puerto Rico,* San Juan, Negociado de Materiales, Imprenta y Transporte, 1933, pág. 158.

374

sentencia el pago de una suma por concepto de honorarios de abogado. *Determinada la existencia de temeridad, la condena de honorarios es imperativa*". (Énfasis suplido y en el original.) Véanse, también: *Hawayek v. A.F.F.*, 123 D.P.R. 526 (1989); *Santos Bermúdez v. Texaco P.R., Inc.*, 123 D.P.R. 351 (1989); *Raoca Plumbing v. Trans World*, 114 D.P.R. 464, 468 (1983); *Montañez Cruz v. Metropolitan Cons. Corp.*, 87 D.P.R. 38, 40 (1962). El ejercicio de la discreción judicial se activa inicialmente en virtud del elemento de temeridad. *Corpak, Art Printing v. Ramallo Brothers*, 125 D.P.R. 724 (1990). Esa determinación conlleva posteriormente la fijación de una suma razonable de honorarios.

■ La regla actual nada dispone sobre la forma de determinarlos. Mucho menos autoriza al tribunal a tomar en consideración, como único criterio determinante, la relación contractual abogado-cliente.[3] La cuantía se mide en virtud de: "[(1)] el grado de temeridad que ha existido[; (2)] la naturaleza del procedimiento[; (3)] los esfuerzos y la actividad profesional que haya tenido que desplegarse[, y (4)] la habilidad y reputación de los abogados." *Santos Bermúdez v. Texaco P.R., Inc.*, supra, págs. 356–357. Véanse, además: *Castro v. Societé Anonyme des Sucreries*, 34 D.P.R. 575, 579 (1925); *Casals v. Rosario*, supra.

■ Es evidente, pues, que el interés judicial primordialmente tutelado en materia de honorarios de abogado es el de *temeridad*. Por su carácter disuasivo-punitivo, su concesión no dependerá exclusivamente de que la parte victoriosa, como cuestión de hecho, haya pagado suma alguna a su abogado. *Canals v. Great American Indemnity Co.*, 56 D.P.R. 457, 460–461 (1940). *Aparte de la temeridad, la Regla, 44.1 de Procedimiento Civil, supra, sólo requiere que exista una relación de abogado-cliente.*

---

(3) En *Feliciano v. Tribunal Superior*, 99 D.P.R. 504, 508 (1970), revocamos una resolución del tribunal de instancia negándose a ver el caso en su fondo por estar el allí peticionario representado por la Corporación de Servicios Legales de Puerto Rico. Fundamos nuestra decisión en que era de la exclusiva competencia de dicha corporación evaluar las cualificaciones de si el cliente era o no indigente.

"[L]a norma que da la ley para el cálculo es el 'valor de los servicios' y ese valor es el que debe fijarse por la corte para ordenar que se pague íntegro o en parte, según las circunstancias que en cada caso concurran. Cuando existe un contrato . . . entre la parte victoriosa y su abogado, puede tomarse [éste] en cuenta para determinar la cuantía en relación con las otras circunstancias concurrentes, pero nunca debe perderse de vista que es el valor de los servicios mismos lo que debe tenderse a fijar por la corte como base de su actuación." *Castro v. Societé Anonyme des Sucreries*, supra, págs. 580–581.

■ Frente a este trasfondo, no podemos supeditar la concesión de honorarios de abogado por temeridad al único supuesto de que la parte afectada los haya sufragado directamente. Ello conllevaría desvirtuar su esencial propósito disuasivo-punitivo. "El principal objetivo de esta norma es castigar a aquel litigante perdidoso que, por su terquedad, obstinación, frivolidad o insistencia —en actitud desprovista de fundamentos— obliga a la parte contraria a asumir innecesariamente las molestias, gastos e inconvenientes de un pleito." *Santos Bermúdez v. Texaco P.R., Inc.*, supra, pág. 356. La citada Regla 44.1 de Procedimiento Civil constituye, en primer término, un arma que el juez apunta hacia el litigante oportunista con el propósito de disuadir cualquier conducta que atente contra la pronta y ordenada adjudicación de derechos. De igual forma, pretende conceder a la parte afectada una suma razonable para compensar los gastos de representación provocados por la conducta obstinada de una parte.

Flaco servicio prestaríamos al litigante indigente si rubricáramos la decisión del ilustrado tribunal de instancia. Permitiría a una parte promover litigios frívolos o dilatar la solución de justos reclamos. Incidentalmente, estaríamos propiciando la dilapidación de los escasos recursos económicos y de personal con que cuentan los grupos e instituciones que prestan servicios legales a los

indigentes.(4) Véanse al efecto: Nota, *Awards of Attorney's Fees to Legal Aid Offices,* 87 Harv. L. Rev. 411, 414–418 (1973); Comentario, *Court Awarded Attorneys' Fees in Recognition of Student Lawyering,* 130 U. Pa. L. Rev. 161, 166–167 (1981).

## II

La resolución del reputado tribunal de instancia, aunque parca, deja entrever —como *ratio decidendi*— su preocupación de que los demandantes Vega *et al.* no incurrieron en gasto alguno por concepto de honorarios de abogado. De manera indirecta la cuestión está dirigida, más bien, a la interrogante de si su concesión por temeridad es acreditable directamente a la entidad que prestó los servicios legales gratuitos.(5)

Nuestro ordenamiento estatutario, en particular las Reglas de Procedimiento Civil, guardan silencio. Únicamente el Canon 24 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, nos remite a la materia cuando dispone que "[l]os honorarios concedidos por un tribunal son para beneficio del cliente y no debe el abogado reclamarlos para sí o renunciarlos sin autorización expresa del cliente". Esta norma deontológica fue incluida en dicho código de ética en virtud de la recomendación propuesta por el Colegio de Abogados en su proyecto de 1ro de octubre de 1970 y aprobado por este Tribunal el 24 de diciembre de 1970. Consagró "el principio de ley de que los honorarios concedidos por un Tribunal pertenecen al cliente y no pueden ser renunciados sin autorización de éste". Informe de la Comisión para Revisar los

---

(4) A estos efectos, es oportuno reconocer una vez más la extraordinaria labor que realizan los abogados y demás empleados de estas entidades, a pesar de la inadecuacidad de sus recursos. *Pueblo v. Vega, Jiménez,* 121 D.P.R. 282 (1988).

(5) Aunque novel en cuanto a la interpretación de la Regla 44.1(d) de Procedimiento Civil, 32 L.P.R.A. Ap. III, su inquietud es suscitada en innumerables planteamientos análogos en las distintas jurisdicciones estatales y en la federal.

La mayoría ha favorecido su concesión cuando la parte victoriosa es representada por asociaciones de ayuda legal gratuita o clínicas de asistencia legal atendidas por estudiantes de derecho. *DiGennaro v. Bowen,* 666 F. Supp. 426, 430 (D.N.Y. 1987); *Jordan v. United States Dept. of Justice,* 691 F.2d 514 (Cir. D.C. 1982); *Palmigiano v. Garrahy,* 616 F.2d 598, 602 (1er Cir. 1980); *Reynolds v. Coomey,* 567 F.2d 1166, 1167 (1er Cir. 1978); *Miller v. Amusement Enterprises, Inc.,* 426 F.2d 534, 538 (5to Cir. 1970), y casos allí citados.

Cánones de Ética Profesional de Puerto Rico de 1ro de junio de 1970, Colegio de Abogados de Puerto Rico, pág. 9.[6]

En la peculiar dinámica profesional generada por la prestación de servicios legales gratuitos a personas indigentes no está presente la premisa ética en la que se apuntala "el principio de ley de que los honorarios concedidos por un tribunal pertenecen al cliente y no pueden ser renunciados sin autorización de éste". Informe de la Comisión para Revisar los Cánones de Ética Profesional de Puerto Rico, *supra.* Esa actividad profesional no configura ni visualiza el interés legítimo tutelado en nuestro ordenamiento jurídico. Se trata de una situación *única* que amerita un tratamiento doctrinario distinto, compatible con sus propósitos remunerativos y disuasivo-punitivos. Véanse: *De León v. Sria. de Instrucción,* 116 D.P.R. 687, 688 (1985); *Bonilla v. Chardón,* 118 D.P.R. 599, 616–617 (1987).

■ En consecuencia, mientras la Asamblea Legislativa no apruebe un estatuto que regule esta materia o disponga lo contrario y al no existir impedimento legal alguno, resolvemos que, en justicia, a los programas de asistencia legal a indigentes no les es aplicable la norma general de que los honorarios por temeridad pertenecen al cliente. Repetimos, la dinámica peculiar de esa relación exige un tratamiento especial. De lo contrario, estaríamos otorgando al cliente una bonanza inmerecida. Como bien señaló el licenciado Agrait Oliveras, en su concepción original, ello sólo se justificaba como remedio procesal para que el cliente satisficiese a su abogado lo adeudado. No atenderíamos su

---

[6] Al presentar este informe a la Junta de Gobierno del Colegio de Abogados, el Lcdo. Francisco Agrait Oliveras —a preguntas del Lcdo. Ángel L. Tapia— explicó así su alcance:

"Lo que se ha querido consagrar aquí es la disposición de ley, o sea el principio de ley de que los honorarios que concede el Tribunal son del cliente. Lo hemos querido hacer así para que los abogados entiendan eso así porque hay abogados que creen que esos honorarios que da el Tribunal son de ellos.

. . . [L]os honorarios del abogado son los que usted pacta con el cliente, no los que concede el Tribunal. *Esos honorarios los concede el Tribunal al cliente para que le pague a usted.* Ahora los honorarios suyos pueden ser más de esos." (Énfasis suplido.) *Reunión Extraordinaria de la Junta de Gobierno del Colegio de Abogados de P.R.* de 22 de julio de 1970, Minuta Núm. 12, pág. 31.

objetivo remunerativo y dejaríamos huérfana a la entidad que prestó servicios legales gratuitos, quien sufragó con sus fondos y recursos el litigio y en parte sufrió los efectos de la conducta temeraria de la parte perdidosa. Al adoptar este curso decisorio, nos hacemos eco de una clara política pública de nuestro sistema de administración de justicia: lograr un servicio legal de calidad accesible a todos. Véanse al efecto: la Sec. 30 de la Ley de la Judicatura, Ley Núm. 11 de 24 de julio de 1952 (4 L.P.R.A. sec. 303); los Arts. 1–4 de la Ley Núm. 81 de 26 de junio de 1964 (4 L.P.R.A. sec. 303a), que eximen a las clínicas de asistencia legal del pago de derechos y aranceles; la Ley Núm. 122 de 9 de junio de 1967, según enmendada, 32 L.P.R.A. sec. 1500, que igualmente releva a la Corporación de Servicios Legales y a entidades similares, y la Ley Núm. 123 de 13 de julio de 1960 (5 L.P.R.A. sec. 1151 *et seq.*), creadora de la Oficina de Ayuda Legal para Agricultores de Escasos Recursos.

Recapitulando, bajo la Regla 44 de Procedimiento Civil, 32 L.P.R.A. Ap. III, los tribunales, una vez hayan hecho una determinación de temeridad, deberán imponer aquellos honorarios de abogado razonables que procedan, independientemente de la identidad de quien los preste y de su relación con el cliente. Como excepción al Canon 24 del Código de Ética Profesional, *supra*, estos honorarios serán otorgados directamente a la representación legal, de figurar ésta entre las organizaciones autorizadas por ley o estar debidamente certificadas por el Secretario de Justicia para prestar servicios a indigentes y personas de escasos recursos económicos y que estén exentas del pago de aranceles y derechos (Ley Núm. 122, *supra*).

Por los fundamentos expuestos, *se dictará sentencia modificatoria y se ordenará el pago de $1,500 por concepto de honorarios de abogado por temeridad a ser satisfechos directamente y a nombre de la Clínica de Asistencia Legal de la Escuela de Derecho de la Universidad de Puerto Rico para su uso exclusivo.*

El Juez Asociado Señor Hernández Denton emitió opinión concurrente y de conformidad. El Juez Asociado Señor Rebollo López no intervino.

—O—

Opinión concurrente y de conformidad emitida por el Juez Asociado Señor Hernández Denton.

Al endosar la opinión del Tribunal, consignamos separadamente ciertos fundamentos adicionales que justifican nuestro dictamen.

La concesión de honorarios de abogado a un indigente, representado por un programa que ofrece servicios legales gratuitos, es compatible con la política pública de promover la mejor representación legal de los pobres, según fue consagrada en la Ley de la Judicatura:

> El Tribunal General de Justicia y la Oficina de Administración de los Tribunales estimularán el establecimiento de ayuda legal para la defensa de personas pobres, con la cooperación del Colegio de Abogados, del Colegio de Derecho de la Universidad de Puerto Rico, y de toda persona interesada en la adecuada protección de los pobres. 4 L.P.R.A. sec. 303.

Según el informe del comité que preparó el proyecto de la Ley de la Judicatura de 1952, esta " 'disposición fue redactada con el fin de estimular el desarrollo de medios enérgicos y eficientes para proporcionar ayuda legal a aquellos que la necesiten en todo el Estado Libre Asociado' ". 4 L.P.R.A. sec. 303 n.

Tomando en consideración la magnitud del problema de la pobreza en Puerto Rico y las necesidades legales de los indigentes, la decisión emitida por este Tribunal tiene el propósito dual de disuadir la litigación temeraria y proveer recursos adicionales a los programas de representación legal gratuita del país: Servicios Legales de Puerto Rico, Inc.; Oficina Legal de Santurce; Pro Bono del Colegio de Abogados y las Clínicas de Asistencia Legal de las facultades de derecho de las universidades.

Aunque estos programas han contado con el apoyo económico del Estado Libre Asociado, del gobierno federal y de las universidades públicas y privadas, los recursos nunca han sido suficientes para proveer servicios a toda la población indigente. Véase Estudio de las necesidades legales de carácter civil de la población pobre de Puerto Rico de 1980, Servicios Legales de Puerto Rico. De hecho, en la última década la Corporación de Servicios Legales de Estados Unidos ha sufrido una merma sustancial en su presupuesto y ha tenido que reducir sus aportaciones a las entidades subvencionadas por Estados Unidos y Puerto Rico. Como resultado de estas restricciones presupuestarias, los programas de servicios legales en Puerto Rico han tenido que reducir el alcance de la asistencia legal. En general, estas entidades manejan un gran volumen de casos y su personal trabaja con grandes sacrificios para ofrecer servicios de calidad a una clientela marginada y acosada por múltiples problemas socio-económicos. Véanse: R.L. Ramírez, *Pobreza en Puerto Rico: teoría y praxis,* IV (Núm. 2) Rev. Adm. Púb. P.R. 89 (1971); R. Santos del Valle y L.F. Negrón García, *El derecho y la pobreza: su relación y el rol de los abogados en Puerto Rico,* IV (Núm. 2) Rev. Adm. Púb. P.R. 167 (1971).

Nuestro dictamen parte de la premisa de que la naturaleza de la asistencia legal recibida por un cliente insolvente no constituye un criterio válido para denegarle la concesión de honorarios de abogado. La decisión permite que los programas clínicos de las universidades y los vinculados a la Corporación de Servicios Legales de Estados Unidos y al Colegio de Abogados amplíen los recursos para combatir la pobreza y el discrimen de los desvalidos. Aunque los servicios ofrecidos son gratuitos, dichos programas tienen que sufragar los costos de representación de sus clientes, incluyendo los sueldos de sus abogados, del personal paralegal y administrativo.

Aunque la labor rendida por este sector es encomiable, no olvidemos que el resto de la profesión también tiene la obligación de "ayudar a establecer medios apropiados para suministrar servicios legales adecuados a todas las personas que no pueden

pagarlos. *Esta obligación incluye la de apoyar los programas existentes y la de contribuir positivamente a extenderlos y mejorarlos*. Canon 1 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX.

Aunque muchos abogados colaboran a tiempo completo o parcial con los distintos programas de asistencia legal, es motivo de preocupación que un número significativo de los miembros de la clase togada no estén contribuyendo positivamente a los programas existentes o no estén participando en la creación de otros medios para ofrecer servicios legales a personas insolventes.

La experiencia en Estados Unidos también revela que este problema ha sido objeto de una intensa polémica en la profesión. De la jurisprudencia y literatura jurídica se desprende que existen diferentes perspectivas sobre el alcance de la obligación ética de proveer asistencia legal a los pobres y los medios disponibles para facilitar este servicio. En la mayoría de los estados se reconoce que los abogados tienen un deber social y ético de representar a los indigentes en casos penales y en acciones civiles. Véanse: *Matter of Snyder,* 734 F.2d 334, 338 (8vo Cir. 1984); *Cunningham v. Superior Court (Ventura County)*, 222 Cal. Rptr. 854, 857–865 (1986); D.L. Shapiro, *The Enigma of the Lawyer's Duty to Serve,* 55 N.Y.U. L. Rev. 735, 736 (1980); Nota, *The Indigent's "Right" to Counsel in Civil Cases,* 43 Fordham L. Rev. 989 (1975).

Corresponde inicialmente al Colegio de Abogados de Puerto Rico tomar las medidas necesarias para facilitar que sus miembros suministren servicios legales adecuados a todas las personas que no puedan pagarlo. El programa Pro Bono del Colegio de Abogados y de Servicios Legales de Puerto Rico es un excelente instrumento para cumplir con esta obligación ética.

No obstante, esta Curia tiene la ineludible obligación de garantizar que "toda persona tenga acceso a la representación capacitada, íntegra y diligente de un miembro de la profesión legal". Canon 1 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX. En estas circunstancias, nuestra responsabilidad social y judicial requiere que al amparo de nuestros poderes constitucio-

nales desarrollemos medios creativos y efectivos para garantizarle ayuda legal a los indigentes. La concesión de honorarios de abogado a los distintos programas de asistencia legal constituye un mecanismo valioso para lograr este objetivo. Así contribuimos a la noble causa de estimular la participación más activa de la clase togada en la defensa de los derechos de los grupos marginados; garantizamos la igualdad de los hombres ante la ley y evitamos el discrimen por origen o condición social vedado por nuestra Constitución.

Por estas razones suscribo la opinión del Tribunal.