Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| | | |
|---|---|---|
| KIVILEE EMPIRE, LLC<br><br>Demandante-Apelada<br><br><br>Vs.<br><br><br>MICHELLE M. ORTIZ FLORES<br><br>Demandada-Apelante | KLAN202500239 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de Humacao<br><br>Caso Núm. HU2024CV01603<br><br>Sala: 208<br><br>Sobre: DESAHUCIO Y COBRO DE DINERO |

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Martínez Cordero y el Juez Cruz Hiraldo.[1]

Cruz Hiraldo, Juez ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 8 de agosto de 2025.

Comparece ante nos Michelle M. Ortiz Flores (en adelante, señora Ortiz Flores o apelante) y nos invita a revocar una *Sentencia Enmendada* emitida el 13 de marzo de 2025, y notificada el 14 de marzo de 2025, por el Tribunal de Primera Instancia, Sala Superior de Humacao.[2] Mediante el referido dictamen, el foro primario declaró *Con Lugar* la *Demanda* de desahucio y cobro de dinero presentada por Kivilee Empire, LLC. (en adelante, Kivilee o apelada) en contra de la apelante.

Por los fundamentos que expondremos a continuación, *confirmamos* el dictamen apelado.

**-I-**

El 21 de octubre de 2024, la apelada presentó una *Demanda* sobre cobro de dinero y desahucio en contra de la señora Ortiz

---

[1] Mediante la OATA-2025-070 del 9 de mayo de 2025, se designó a la Hon. Monsita Rivera Marchand para entender y votar en el caso de epígrafe en sustitución del Hon. Abelardo Bermúdez Torres.
[2] Apéndice 20 de la *Apelación,* págs. 71-74; Entrada 38 SUMAC.

Flores.[3] En síntesis, alegó que el 5 de mayo de 2024, suscribió un contrato de arrendamiento con la apelante para arrendarle el apartamento 404 del Condominio Harbour Point en Palmas del Mar por un término de un (1) año, con fecha de vencimiento el 1 de junio de 2025, por un canon de $2,700.00 mensuales.

Además, que, desde julio, la señora Ortiz Flores presentó dificultades para efectuar el canon mensual debido a que ésta alegaba que no contaba con la información necesaria para así hacerlo.

Igualmente, esgrimió que la apelante utilizó cinco (5) tarjetas diferentes para efectuar el pago del mes de julio, y lo anterior resultó en que un banco levantara una advertencia de fraude, que provocó la congelación de las cuentas de la apelada por unos días mientras se confirmaba la transferencia. De igual forma, sostuvo que, a la fecha de la presentación de la demanda, la apelante debía los meses de agosto, septiembre y octubre. En adición, que, el 2 de septiembre de 2024, cursó una carta de cobro a la señora Ortiz Flores.

De ese modo, arguyó que la apelante adeudaba la cantidad de $8,100.00 en concepto de rentas vencidas y no pagadas, y $4,550.00 en concepto de penalidades por pagos atrasados, para un total de $12,650.00. Consecuentemente, solicitó al foro primario que ordenara el desahucio y lanzamiento de la señora Ortiz Flores, y la condenara al pago de la referida suma de $12,650.00 y de $5,000.00, éstos por concepto de honorarios de abogados.

El 20 de noviembre de 2024, luego de varios incidentes procesales, la apelante presentó una *Contestación a la Demanda y Reconvención*.[4] En síntesis, negó las alegaciones de la demanda y alegó haber pagado las mensualidades correspondientes a junio y julio, así como la fianza. Además, sostuvo que se ha visto afectada

---

[3] Apéndice 1 de la *Apelación*, págs. 1-28; Entrada 1 SUMAC.
[4] Apéndice 3 de la *Apelación*, págs. 32-40; Entrada 18 SUMAC.

mental y físicamente por las acciones de la apelada en sus intentos de que se desalojara la propiedad.

A su vez, que para el 1 de junio de 2024, no se le permitió mudarse al apartamento, lo que detuvo, entre otras cosas las gestiones de mudanza, y ello provocó gastos y la paralización de su función como presidenta de la empresa MOB Enterprise LLC.

En adición, alegó que, para el 8 de junio, el apartamento aún no se encontraba listo debido a que no estaba limpio y aún tenía pertenencias ajenas. Asimismo, sostuvo que, ese mismo día, un señor llamado Bengie llegó a la propiedad y comenzó a remover las pertenencias de la persona dueña del apartamento. Lo anterior ocurrió sin previo aviso a la apelante y mientras ésta se encontraba en ropas menores.

De igual manera, que debido a las condiciones en las que se encontraba el apartamento, se enfermó y tuvo que pagar una estadía en un hotel. De otro lado, incoó que el 9 de junio de 2024, llegó al apartamento otro caballero para cambiar la cerradura sin su previa autorización. También, aseveró que un vecino le notificó que tuviera cuidado con el propietario del apartamento, el señor Milton López, ya que este tenía cámaras en el apartamento y los alrededores, a través de las cuales grababa y veía quien entraba al apartamento.

Igualmente, la señora Ortiz Flores aseveró que tuvo que trasladarse a otro hotel para poder trabajar debido a que el apartamento no contaba con cable e internet, lo que le ocasionó gastos innecesarios para cumplir con su jornada laboral. Por otro lado, que el 12 de junio de 2024, sufrió una cortadora por cristales rotos y quemadura de ácido en el horno de la estufa en el inmueble.

Por tanto, solicitó al tribunal que le concediera una cantidad no menor de $1,500,000.00 por daños ocasionados, invasión a la privacidad y violación al derecho de la intimidad, angustias

mentales y morales, así como por los gastos y costas relacionadas con el litigio.

El 21 de noviembre de 2024, se celebró una vista ante el TPI, cuya Minuta y transcripción obran en el expediente ante nos.[5] Allí, la apelante le hizo entrega a la apelada de cinco (5) cheques, todos por la cantidad de $2,700.00 y correspondientes a las mensualidades de agosto a diciembre de 2024. La señora Ortiz Flores sostuvo que no conocía a qué dirección remitir los pagos, razón por la que los realizó en corte abierta. La parte apelada recibió y aceptó la entrega.

El 2 de diciembre de 2024, Kivilee presentó una *Moción de Desestimación En Cuanto a Reconvención*.[6] Sostuvo que el desahucio es un asunto de naturaleza sumaria y que, por tanto, procede en su contra la defensa de título o contrato vigente. Además, alegó que cualquier otra alegación de la apelante debe ventilarse en un pleito distinto. Por consiguiente, requirió al tribunal que desestimara la reconvención.

Así las cosas, el 19 de diciembre de 2024, la apelante solicitó el desistimiento sin perjuicio de la reconvención a través de una *Moción de Desistimiento de Reconvención*.[7] Ante ello, el 19 de diciembre de 2024, el TPI ordenó el archivo sin perjuicio de la reconvención mediante una *Sentencia Parcial*, que fue notificada el 20 de diciembre de 2024.[8]

Así las cosas, el 10 de febrero de 2025, la apelante presentó una *Moci[ó]n en Cumplimiento de Orden*.[9] Acompañó el escrito con copia de los cheques, cada uno por $2,700.00, que indicó eran correspondientes a las mensualidades de enero y febrero de 2025.

---

[5] Apéndice 4 de la *Apelación*, pág. 41; Entrada 20 SUMAC.
[6] Apéndice 5 de la *Apelación*, págs. 42-45; Entrada 21 SUMAC.
[7] Apéndice 7 de la *Apelación*, pág. 46; Entrada 23 SUMAC.
[8] Apéndice 8 de la *Apelación*, págs. 47-48; Entrada 24 SUMAC.
[9] Apéndice 9 de la *Apelación*, págs. 49-50; Entrada 27 SUMAC.

Ese mismo día, se celebró el juicio en su fondo, con cuya Minuta y transcripción tenemos el beneficio de contar.[10] Allí, testificaron la señora Kiara Anaís López Jiménez, presidenta de Kivilee Empire LLC. (en adelante, señora López Jiménez), y la apelante. En esencia, la señora López Jiménez testificó que solo recibió de la señora Ortiz Flores el pago de la primera mensualidad y nunca se recibió otro pago adicional hasta que se presentó la demanda del presente caso, cuando recibieron los pagos correspondientes a los meses de agosto a diciembre de 2024. Esgrimió que los pagos se debían recibir a través una plataforma electrónica llamada Quickbooks, pero la apelante solicitó la devolución de una transacción hecha, razón por la que se dejó de recibir el dinero a través de la plataforma. Ante ello, se le indicó a la señora Ortiz Flores que podía pagar a través de depósito directo o cheque. Durante el contrainterrogatorio, la señora López Jiménez expuso que, al momento de suscribir el contrato, Kivilee no había sido incorporada todavía y aun no era dueña de la propiedad.

Por su parte, la señora Ortiz Flores testificó acerca de los inconvenientes que tuvo para vivir en el apartamento y sostuvo que no le adeudaba dinero a la apelada. Especificó que se habían pagado los meses de junio y julio, así como la fianza. Además, que no recibió las comunicaciones de Kivilee porque no tenía acceso al buzón del correo postal y que la gerencia del condominio no aceptó recibir los pagos. En adición, señaló que desconocía la dirección postal a la que cursar los pagos y solo se le proveyeron los números de ruta y de cuenta de la señora López Jiménez mas no el tipo de cuenta bancaria, razón por la que no pudo realizar los pagos a través del banco. En el contrainterrogatorio, aceptó que en el contrato se especificó el procedimiento para notificar a la arrendataria de los

---

[10] Apéndice 12 de la *Apelación*, págs. 55-57; Entrada 30 SUMAC.

inconvenientes que tuviera con el apartamento, pero no contaba con evidencia de las gestiones que hizo para notificarlos. El 28 de febrero de 2025, y notificada el mismo día, el TPI dictó una *Sentencia.*[11] En síntesis, el foro primario resolvió que la apelante reconoció el no haber realizado los pagos correspondientes a los meses agosto, septiembre, octubre, noviembre y diciembre de 2024 y que, como consecuencia de ello, el contrato de arrendamiento fue resuelto por la apelada.

Siendo así, y toda vez que la señora Ortiz Flores no poseía título ni derecho propietario alguno, determinó que procedía el desahucio de la propiedad. En adición, impuso la suma de $2,500.00 por concepto de costas y honorarios de abogado.

El 6 de marzo de 2025, la apelante presentó una *Moci[ó]n para que se Enmiende Sentencia para que se Fije Fianza para Apelaci[ó]n.*[12] En ésta, solicitó que se enmendara la sentencia ya que no fijaba la fianza a consignar para instar un recurso de apelación. Ante ello, la apelada presentó una *Moci[ó]n en Cumplimiento de Orden sobre Fianza en Apelación.*[13] Solicitó la imposición de una fianza en apelación de no menos de $150,000.00 y que no se paralizaran los procedimientos de ejecución de la sentencia.

El 13 de marzo de 2025, notificada el 14 de marzo de 2025, el foro *a quo* emitió una *Sentencia Enmendada.*[14] En ésta, el TPI añadió una suma de $10,800.00 por concepto de fianza en apelación.

Inconforme, y tras consignar la fianza determinada,[15] la apelante acude ante nos el 21 de marzo de 2025 mediante el presente recurso de *Apelación* y señala al foro primario por la comisión de los siguientes señalamientos de error:

> **1. Erró el Honorable TPI al Declarar [H]a Lugar la demanda de desahucio y cobro de dinero; y ordenar la**

---

[11] Apéndice 14 de la *Apelación*, págs. 59-62; Entrada 32 SUMAC.
[12] Apéndice 15 de la *Apelación*, págs. 63-65; Entrada 33 SUMAC.
[13] Apéndice 19 de la *Apelación*, págs. 69-70; Entrada 37 SUMAC.
[14] Apéndice 20 de la *Apelación*, págs. 71-74; Entrada 38 SUMAC.
[15] Apéndice 21 de la *Apelación*, págs. 75-76; Entrada 40 SUMAC.

entrega de la propiedad a la parte demandante con fecha de efectividad del 28 de febrero de 2025.

2. **Erró el Honorable TPI al Declarar [H]a Lugar la demanda de desahucio sin tomar en consideración las alegaciones de la Apelante en cuanto a que la Apelada incumplió el contrato de arrendamiento.**

3. **Erró el Honorable TPI al establecer como un hecho que la parte Apelante no pagó el canon de arrendamiento del mes de junio de 2024 y un mes de fianza para un total de $5,400.00. La Apelante pag[ó] en dos ocasiones por el mismo plazo.**

4. **Erró el Honorable TPI al establecer como un hecho que la parte Apelante adjudicó el pago de fianza al mes julio de 2024.**

5. **Erró el Honorable TPI al imponer la suma de $2,500.00 por concepto de costas, gastos y honorarios de abogado.**

6. **Erró el Honorable TPI al establecer como un hecho que la Apelante dejó de pagar la renta por espacio de cinco meses y declaró resuelto el contrato, cuando la demanda fue radicada en octubre de 2024.**

7. **Erró el Honorable TPI al fundamenta[r] su sentencia en evidencia testifical ajena a la permitida en un trámite sumario conforme al Artículo 628 del Código de Enjuiciamiento Civil, 32 LPRA § 2829, y la jurisprudencia aplicable.**

Por su parte, el 7 de julio de 2025, Kivilee compareció mediante *Contestación a la Apelación*. Con el beneficio de la comparecencia de todas las partes, procedemos a disponer del presente recurso, no sin antes evaluar la normativa jurídica aplicable.

-*II*-

-*A*-

Es pilar fundamental de nuestro acervo contractual puertorriqueño el principio de la libertad de contratación. *Arthur Young & Co. v. Vega III,* 136 DPR 157, 169 (1994). A base de éste, las partes contratantes pueden establecer las condiciones que tengan por conveniente, siempre que éstas no sean contrarias a la ley, a la moral o a las buenas costumbres. 31 LPRA sec. 6242. Así,

se posibilita que las partes puedan contratar cuando quieran, como quieran y con quien quieran. J. Puig Brutau, *Fundamentos de Derecho Civil: Doctrina General del Contrato,* 3ra ed., Barcelona, Ed. Bosch, 1988, T. II, Vol. I, pág. 5.

Es norma sólidamente establecida en nuestra jurisdicción que el contrato tiene fuerza de ley entre las partes, por lo que desde el momento de su perfeccionamiento cada contratante debe actuar de buena fe en el cumplimiento de su obligación. Artículos 1233 y 1062 del Código Civil, 31 LPRA secs. 9754 y 8983; *Cruz, López v. Casa Bella y otros,* 213 DPR 980, 994 (2024). Es por ello por lo que existe un contrato desde que dos o más partes expresan su consentimiento en la forma prevista por la ley, para crear, regular, modificar o extinguir obligaciones. 31 LPRA sec. 9751.

En ese sentido, un contrato es vinculante desde que concurren los siguientes requisitos: (1) consentimiento de los contratantes; (2) objeto determinable y (3) causa lícita. 31 LPRA 6131 y 31 LPRA sec. 6142; *Cruz, López v. Casa Bella y otros, supra,* pág. 995. Consecuentemente, "cuando la ley no designa una forma para la realización de un negocio jurídico, se puede utilizar aquella que se considere conveniente". 31 LPRA sec. 6161.

Particularmente, el contrato de arrendamiento consiste en que "una de las partes se obliga a dar a la otra el goce o uso de una cosa por tiempo determinado y precio cierto." *SLG Ortiz-Mateo v. ELA,* 211 DPR 772, 797 (2023); Artículo 1331 del Código Civil, 31 LPRA sec. 10101. Al pactar el contrato, el dueño, o arrendador, se desprende voluntariamente de parte de su derecho de propiedad consistente en el goce o uso material de la cosa, por determinado tiempo y a cambio de un precio. *Garage Coop. de Sabana Grande v. Arco Caribbean, Inc.,* 111 DPR 52, 54 (1981).

Pertinente a la controversia ante nos, el Artículo 1348 del Código Civil establece que:

El arrendador puede resolver el contrato cuando el arrendatario:

(a) abandona o deja de usar el bien arrendado, o varía el uso convenido

(b) incumple la obligación de conservar, por sí o por un tercero a cuenta suya, el bien arrendado; o

**(c) deja de pagar el alquiler convenido durante dos (2) períodos consecutivos**.

31 LPRA sec. 10171 (énfasis suplido).

### *-B-*

Asimismo, el Artículo 725 del Código Civil establece que "[l]a persona con derecho a poseer un bien tiene acción para promover el juicio de desahucio contra cualquier poseedor sin derecho a poseer." 31 LPRA sec. 7863. La acción de desahucio es un procedimiento especial de naturaleza sumaria que se encuentra regulado en el Código de Enjuiciamiento Civil, 32 LPRA secs. 2821-2838. Esta acción es "el medio que tiene el dueño o la dueña de un inmueble arrendado para recobrar judicialmente la posesión de este mediante la expulsión del arrendatario o precarista que se mantiene en la propiedad sin pagar canon o merced alguna." *SLG Ortiz-Mateo v. ELA, supra,* pág. 799, citando a *Cooperativa v. Colón Lebrón,* 203 DPR 812, 820 (2020); *Adm. Vivienda Pública v. Vega Martínez,* 200 DPR 235, 240 (2018); *Fernández & Hno. v. Pérez,* 79 DPR 244, 247 (1956).

Cabe destacar que el Artículo 627 del Código de Enjuiciamiento Civil establece que cuando la acción de desahucio se fundamenta en el incumplimiento del pago del canon convenido en un contrato, no se admitirá de parte del demandado otra prueba que la del recibo o cualquier otro documento en que conste haberse verificado el pago. 32 LPRA sec. 2829. Asimismo, el Código de Enjuiciamiento Civil provee para que la parte perdidosa en una acción de desahucio inste un recurso para apelar la sentencia que

recaiga en su contra. *Íd.,* sec. 2830; *Cooperativa v. Colón Lebrón,* 203 DPR 812, 820 (2020).

Conforme a su naturaleza expedita, las apelaciones en este tipo de casos deben instarse dentro del término de cinco (5) días a partir del archivo en autos de la notificación de la sentencia. 32 LPRA sec. 2831; *Cooperativa v. Colón Lebrón, supra,* pág. 820. Sin embargo, "[n]o se admitirá al demandado el recurso de apelación si no otorga fianza, por el monto que sea fijado por el tribunal, para responder de los daños y perjuicios que pueda ocasionar al demandante y de las costas de apelación." 32 LPRA sec. 2832.

Cónsono con lo anterior, el Más Alto Foro judicial ha aclarado que el término de cinco (5) días para apelar la sentencia en estos casos, "no comenzará a transcurrir hasta tanto el Tribunal de Primera Instancia fije el monto de la fianza que debe otorgarse." *Cooperativa v. Colón Lebrón, supra,* pág. 820 (citando a *ATPR v. SLG Volmar-Mathieu,* 196 DPR 5, 14-15 (2016)).

Finalmente, en los casos en los que el Tribunal de Primera Instancia declare con lugar la demanda de desahucio, podrá ordenar el lanzamiento de la parte demandada desde que la sentencia sea final y firme. 32 LPRA sec. 2836. Por regla general, "la sentencia será final y firme cuando transcurra el término de cinco días sin que se haya presentado una apelación." *Cooperativa v. Colón Lebrón, supra,* pág. 821.

-***C***-

Los tribunales apelativos no debemos intervenir con la apreciación de la prueba que realiza el Tribunal de Primera Instancia, en ausencia de error manifiesto, pasión, prejuicio, parcialidad o error manifiesto. *Ortiz Ortiz v. Medtronic,* 209 DPR 759, 778 (2022); *SLG Fernández-Bernal v. RAD-MAN et al.,* 208 DPR 310, 338 (2021); *Santiago Oriz v. Real Legacy et al.,* 206 DPR 194, 219 (2021); *Gómez Márquez et al. v. El Oriental,* 203 DPR 783, 793

(2020); *SLG Torres-Matundan v. Centro Patología,* 193 DPR 920, 933 (2015). Ello por cuanto "la tarea de adjudicar credibilidad y determinar lo que realmente ocurrió depende en gran medida de la exposición del juez o la jueza a la prueba presentada, lo cual incluye, entre otros factores, ver el comportamiento del testigo mientras ofrece su testimonio y escuchar su voz." *Ortiz Ortiz v. Medtronic, supra,* págs. 778-779 (citando a *Dávila Nieves v. Meléndez Marín,* 187 DPR 750, 771 (2013)); *Gómez Márquez et al. v. El Oriental, supra,* págs. 792-793. Esta deferencia judicial responde a que "los jueces de las salas de instancia están en mejor posición para aquilatar la prueba testifical porque tienen la oportunidad de oír, ver y apreciar el comportamiento del testigo." *Ortiz Ortiz v. Medtronic, supra,* pág. 779 (citando a *Santiago Oriz v. Real Legacy et al., supra,* pág. 219); *Meléndez Vega v. El Vocero de PR,* 189 DPR 123, 142 (2013).

Nuestro Máximo Foro judicial ha expresado que incurre en pasión, prejuicio o parcialidad el juzgador que actuó por inclinaciones personales de tal intensidad que adoptó posiciones, preferencias o rechazos con respecto a las partes o sus causas que no admiten cuestionamiento, sin importar la prueba recibida en sala o incluso antes de que se someta prueba alguna ante su consideración. *Ortiz Ortiz v. Medtronic, supra,* pág. 779 (citando a *Dávila Nieves v. Meléndez Marín, supra,* pág. 782).

Es, por lo tanto, que, ante una alegación de pasión, prejuicio o parcialidad, los foros apelativos debemos revisar, primeramente, si el juez o jueza de instancia cumplió su función de adjudicar imparcialmente, pues solo así podrá descansar en sus determinaciones de hechos. *Gómez Márquez et al. v. El Oriental, supra,* pág. 793; (citando a *Dávila Nieves v. Meléndez Marín, supra,* pág. 777).

Por otro lado, ocurre el error manifiesto cuando el foro apelativo queda convencido de que se cometió el error a pesar de

que haya evidencia que sostenga las conclusiones de hecho del tribunal, porque existe un conflicto entre las conclusiones y el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida. *Ortiz Ortiz v. Medtronic, supra*, pág. 779; *Gómez Márquez et al. v. El Oriental, supra,* pág. 793; (citando a *Dávila Nieves v. Meléndez Marín, supra*, pág. 772; *Méndez v. Morales,* 142 DPR 26, 36 (1996).

Asimismo, se incurre en un error manifiesto "cuando 'la apreciación de [la] prueba se distancia de la realidad fáctica o es inherentemente imposible o increíble.'" *Ortiz Ortiz v. Medtronic, supra*, pág. 779 (citando a *Pueblo v. Toro Irizarry*, 200 DPR 834, 859 (2018) (énfasis y negrillas suprimidas)); *Gómez Márquez et al. v. El Oriental, supra,* pág. 793. Ello se manifiesta con particularidad cuando el tribunal descansa exclusivamente en una parte de la prueba, mientras hubo otra prueba que la contradijo. *Gómez Márquez et al. v. El Oriental, supra,* pág. 793; (citando a *Méndez v. Morales, supra,* pág. 37).

Por consiguiente, la facultad de los foros judiciales apelativos para sustituir el criterio de los foros judiciales de instancia está restringida a los escenarios en que, de la prueba admitida, "no exista base suficiente que apoye su determinación". *Ortiz Ortiz v. Medtronic, supra*, pág. 779; y citando a *Gómez Márquez et al. v. El Oriental,* 203 DPR 783, 794 (2020). Claro está, las diferencias en el criterio jurídico no alcanzan el referido estándar de revisión. *Ortiz Ortiz v. Medtronic, supra*, pág. 780; *Gómez v. Márquez et al. v. El Oriental, supra,* pág. 794.

### -III-

En el presente caso, la apelante hace varios señalamientos de error que, por estar íntimamente relacionados entre sí, discutiremos en conjunto. Esencialmente, señala al TPI por declarar *Con Lugar* la demanda y adjudicar el incumplimiento por parte de la señora Ortiz

Flores de pagar los cánones de arrendamiento. Sostiene que el foro primario no consideró sus alegaciones sino prueba ajena a la permitida en un procedimiento de desahucio sumario. Asimismo, que el foro *a quo* impuso honorarios de abogado excesivo e improcedentes. No le asiste la razón. *Veamos.*

En primer lugar, la apelante sostiene que Kivilee no probó que le haya requerido el pago de los cánones adeudados ni que le haya notificado sobre la resolución unilateral del contrato de arrendamiento. Asimismo, arguye que siempre tuvo la intención de realizar los pagos, los cuales no pudo tramitar por circunstancias ajenas a su voluntad y resalta que la señora López Jiménez atestiguó que no existía una deuda pendiente al momento en que se celebró el juicio en su fondo, por lo que no procedía una causa de acción de desahucio por falta de pago.

Particularmente, la *Demanda* en el presente caso se basó en que se adeudaban los cánones correspondientes a los meses de **agosto**, **septiembre** y **octubre** de 2024, cada uno de $2,700.00, para un total de $8,100.00. No obstante, nótese que la deuda por la que surgió el presente litigio fue, precisamente, satisfecha por la apelante en corte de abierta, durante la vista celebrada el 21 de noviembre de 2024. Allí, la señora Ortiz Flores le hizo entrega a la apelada de cheques por $2,700.00 en pago de los meses adeudados (entiéndase, agosto, septiembre y octubre) y, por adelantado, los pagos de noviembre y diciembre de 2024. Ciertamente, cuando se celebró el juicio en su fondo, no podían existir cánones adeudados por cuanto ya habían sido satisfechos. Y es que no podía haber declarado lo contrario la señora López Jiménez cuando atestiguó que no había una deuda pendiente.

Sin embargo, distinto a lo aducido por la apelante, ello no significa que no procedía, sin más, el desahucio. Como vimos, el Código Civil establece que el arrendador está facultado para resolver

unilateralmente un contrato de arrendamiento cuando el arrendatario deja de pagar el alquiler pactado por dos (2) períodos consecutivos. Artículo 1348 del Código Civil, 31 LPRA sec. 10171. En el caso ante nos, quedó probado, con los pagos que realizó la propia apelante, que, al momento en que se instó la causa de acción, ésta adeudaba tres (3) alquileres consecutivos: agosto, septiembre y octubre de 2024.

Consecuentemente, una vez el arrendamiento queda resuelto, procede que el arrendador solicite el desahucio del arrendatario para "recobrar judicialmente la posesión [del inmueble] mediante la expulsión del arrendatario . . . que se mantiene en la propiedad sin pagar canon o merced alguna." *SLG Ortiz-Mateo v. ELA, supra,* pág. 799; *Fernández & Hno. v. Pérez,* 203 DPR 812, 820 (2020); *Adm. Vivienda Pública v. Vega Martínez,* 200 DPR 235, 240 (2018); *Fernández & Hno. v. Pérez,* 79 DPR 244, 247 (1956).

Un análisis del recurso instado refleja que la apelante cuestiona la suficiencia de la prueba testifical en el presente caso. Ello se refiere, indubitadamente, al valor probatorio o la apreciación que le mereció el TPI. Sin embargo, tras examinar las transcripciones y la totalidad del expediente ante nos, no surge error manifiesto, pasión, perjuicio o parcialidad, por la que debamos intervenir y no conceder entera deferencia al foro *a quo* en su apreciación de prueba. Ciertamente, las alegaciones y defensas de la apelante, entre las que, especialmente, se incluye su testimonio, fueron objeto de la consideración del foro primario, que las recibió y aquilató en una mejor posición que esta Curia.

Por otro lado, la señora Ortiz Flores señala que el TPI consideró prueba ajena a la que el Código de Enjuiciamiento Civil permite en el presente caso. La apelante arguye que el Artículo 627 del Código de Enjuiciamiento Civil, *supra,* limita la prueba permitida

en procedimientos sumarios de desahucio. En particular, la parte apelante aduce en su alegato suplementario:

> La parte Apelada, en este caso y promovente de la acción de desahucio, de dinero, tenía el peso de la prueba en apoyo de sus alegaciones, incluyendo, la alegada existencia de una deuda vencida, líquida y exigible para que procediera el desahucio y el cobro de dinero reclamado. Sin embargo, en este caso la parte Apelada, falló en probar que la deuda alegada era líquida, estaba vencida y era exigible.

El argumento de la parte apelante resulta frívolo y temerario al compararlo con el contenido del expediente. Conforme surge del expediente del caso, en la vista del 21 de noviembre de 2024, la parte apelante pagó los meses de agosto, septiembre, octubre, noviembre y diciembre. De esta forma, la parte apelante admitió, en corte abierta, el impago reclamado por la parte apelada. Respecto a este punto, hacemos nuestras las siguientes palabras del foro de primera instancia:

> La demandada ha reconocido que no había realizado los pagos de los meses de agosto, septiembre, octubre y noviembre y diciembre de 2024 los cuales efectuó en corte abierta el 21 de noviembre de 2021.

> Es decir, que incumplió con el contrato el cual se tuvo por resuelto por la parte demandante. La parte demanda no tiene título ni derecho alguno sobre la propiedad por lo que procede en derecho el desahucio.

Olvida la parte apelante el conocido principio probatorio "admisión de parte relevo de prueba". *Díaz Díaz v. Asoc. Res. Quintas San Luis*, 196 DPR 573, 582 (2016); *Pueblo v. Rexach Benítez*, 130 DPR 273, 342 (1992). En vista de la admisión de la parte apelante ante el foro primario, el apelado quedó relevado de demostrar que la deuda reclamada era líquida, estaba vencida y era exigible.[16] En

---

[16] En acciones de cobro de dinero "[e]l demandante sólo tiene que probar que existe una deuda válida, que la misma no se ha pagado, que él es el acreedor y los demandados sus deudores". *General Electric v. Concessionaires, Inc.*, 118 DPR 32, 43 (1986). El Tribunal Supremo ha expresado que, cuando se presenta una demanda en cobro de dinero, la parte demandante debe alegar que la deuda reclamada es una líquida, que está vencida y es exigible. *Ramos y otros v. Colón y otros*, 153 DPR 534, 546 (2001); *Guadalupe v. Rodríguez*, 70 DPR 958, 966 (1950). Una deuda es "líquida" cuando la cuantía de dinero debida es "cierta" y "determinada". *RMCA v. Mayol Bianchi*, 208 DPR 100, 108-109 (2021);

consecuencia, al momento de dictarse la sentencia la deuda no existía, pues la parte apelante cumplió con sus pagos, mas no así con el contrato de arrendamiento. Pues al haber incumplido dos pagos seguidos, el Código Civil permitía al apelado declarar resuelto el contrato, como lo hizo al presentar la demanda. Artículo 1348 del Código Civil, *supra.*

En todo caso, como vimos, la limitación en cuento aprueba aducida por la parte apelante, solo aplica a la **parte demandada** en una acción de desahucio *sumario*, y establece que, en casos sobre desahucio *sumario* por falta de pago del canon o precio convenido, no se le permite a ésta otra prueba que no sea "la del recibo o cualquier otro documento en que conste haberse verificado el pago." 32 LPRA sec. 2829. En otras palabras, la limitación es sobre la prueba permitida a la parte promovida, en su defensa contra una acción de desahucio por falta de pago, de manera que sea un documento que confirme que se realizó el pago del precio que se alega adeudado. Siendo así, en el presente caso, el Código de Enjuiciamiento Civil a quien limita es a la apelante respecto a la prueba que podía presentar. En ese sentido, la prueba permitida de parte de la señora Ortiz Flores era un documento que confirmara el pago de los cánones adeudados.

Finalmente, el error en cuanto a que la imposición de los honorarios de abogado fue excesiva e improcedente tampoco se cometió. Nótese que, conforme a la cláusula dieciocho (18) del contrato de arrendamiento, las otorgantes pactaron que "[e]n caso

---

*Ramos y otros v. Colón y otros*, *supra*, pág. 546; *Freeman v. Tribunal Superior*, 92 DPR 1, 25 (1965). Es decir, que "la deuda es líquida cuando se sabe cuánto es lo que se debe". *Ramos y otros v. Colón y otros*, *supra*, pág. 546. El Tribunal Supremo expresó: "El vocablo 'líquida' en relación con una cuenta, en lenguaje corriente significa el saldo 'o residuo de cuantía cierta que resulta de la comparación del cargo con la data'." *Guadalupe v. Rodríguez*, *supra*, 966 (1950). El término "exigible refiriéndose a una obligación, significa que puede demandarse su cumplimiento". *Carazo v. Srio. De Hacienda*, 118 DPR 306, 315 (1987); *Guadalupe v. Rodríguez*, *supra*, pág. 966.

de reclamación judicial en cobro de cánones de arrendamiento, o en caso de procedimiento de desahucio, los costos, gastos y honorarios de abogado serán por cuenta de la **ARRENDATARIA**."[17] Por tanto, la imposición de abogados no fue improcedente.

Por otro lado, es norma hartamente conocida que la imposición de honorarios de abogado recae en la sana discreción del tribunal. *Vega v. Luna Torres,* 126 DPR 370, 373 (1990); *Fernández v. San Juan Cement Co., Inc.,* 118 DPR 713, 717 (1987). Asimismo, que un foro judicial apelativo no intervendrá con las determinaciones discrecionales de un tribunal sentenciador, a no ser que las decisiones emitidas resulten arbitrarias o en un abuso de su discreción. *BPPR v. SLG Gómez-López,* 213 DPR 314, 334 (2023); *VS PR, LLC v. Drift-Wind,* 207 DPR 253, 273; *Umpierre Matos v. Juelle, Mejía,* 203 DPR 254, 276 (2019); *Citibank et al. v. ACBI et al.,* 200 DPR 724, 736 (2018).

Por consiguiente, tras entender que no estamos ante alguna de las referidas circunstancias excepcionales, no vemos razón para entender que el TPI se excedió en su discreción para imponer honorarios de abogado en el presente caso.

En fin, tras evaluar minuciosamente los alegatos de ambas partes y la totalidad del expediente, a la luz del derecho aplicable, es forzoso concluir que no se cometieron los errores señalados.

### *-IV-*

Por los fundamentos que anteceden, los que hacemos formar parte de este dictamen, *confirmamos* la *Sentencia* apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[17] Apéndice 1 de la *Apelación,* pág. 11 (negrillas en el original).