Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel Especial

| | | |
|---|---|---|
| JOSÉ ENRIQUE GONZÁLEZ ÁVILA<br><br>Peticionario<br><br><br>*v.*<br><br><br>MÓNICA GRACIELA GARCÍA GARCÍA, *ET AL.*<br>Recurridos | KLCE202500560 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Carolina<br><br>Civil Núm. CA2024CV03391<br><br>Sobre: Impugnación de Testamento, Solicitud para remover Albacea y rendición de cuentas |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Adames Soto y la Jueza Santiago Calderón

Adames Soto, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 12 de febrero de 2026.

Comparece el señor José Enrique González Ávila (el peticionario) quien nos solicita la revocación de la *Resolución* dictada en su contra por el Tribunal de Primera Instancia, Sala de Carolina, (TPI), el 18 de marzo de 2025. Mediante dicho dictamen, el foro primario descalificó al abogado del peticionario, el licenciado Carlos M. Calderón Garnier (Lcdo. Calderón) por infringir el Canon 21 del Código de Ética Profesional.

Por los fundamentos que expondremos, decidimos expedir el auto de *certiorari* para confirmar en parte y revocar en parte el dictamen recurrido.

### I. Resumen del tracto procesal pertinente

El 1 de octubre de 2024, el peticionario presentó una demanda contra la Sra. García (la recurrida), impugnando el testamento abierto que su padre José Guillermo González otorgó el 7 de junio de 2022. En la

demanda también se solicitó que ordenaran a la recurrida a que cumpliera con su obligación de rendir cuentas y la destituyeran como ejecutora del testamento. Varios días después, el 15 de octubre de 2024, el peticionario enmendó su demanda para acumular como parte indispensable a Priscilla Andrea González Ávila (Sra. González Ávila), y al licenciado Luis Manuel García Tous, notario ante quien se otorgó el testamento objeto de la demanda.

Luego, el 16 de noviembre de 2024, el licenciado Rolando X. Vázquez (Lcdo. Vázquez) compareció ante el TPI presentando una moción para asumir la representación de la Sra. Gónzalez Ávila.

Sin embargo, el 20 de noviembre de 2024, el Lcdo. Calderón se opuso a que el Lcdo. Vázquez asumiera la representación de la Sra. Gónzalez Ávila, imputándole tener conflictos de interés.

En respuesta, el 12 de diciembre de 2024, el Lcdo. Vázquez sometió una moción con dos propósitos: 1) oponerse a la solicitud de descalificación en su contra; 2) solicitar la descalificación del Lcdo. Calderón, esgrimiendo que esta estaba infringiendo el Canon 21 del Código de Ética Profesional, infra, al haber representado a la Sra. Gónzalez Ávila previo al inicio del pleito, es decir, conflicto de interés por representación sucesiva adversa.

Ante lo cual, el 20 de diciembre de 2024, el Lcdo. Calderón sometió su respuesta, reiterando la solicitud para descalificar al Lcdo. Vázquez y oponiéndose a la petición de su propia descalificación.

Para dilucidar las referidas peticiones de descalificación, el TPI pautó una vista a ser celebrada el 17 de marzo de 2025, ordenando a las partes que "presenten en SUMAC toda la prueba documental que interesen presentar en dicha vista **e informar los nombres y correo electrónicos de todos los testigos que van a declarar en ella**".[1] (Énfasis provisto).

No obstante, antes de la celebración de la referida vista, el 10 de marzo de 2025, el Lcdo. Vázquez solicitó ser relevado de la representación

---

[1] Entrada 42 del Expediente de SUMAC, *Orden.*

legal de la Sra. Gónzalez Ávila, asumiéndola en su lugar la licenciada Ada N. Pagán (Lcda. Pagán). En consecuencia, esta renuncia tornó en académica la controversia sobre posibles conflictos de interés del Lcdo. Vázquez.

Además, las partes sometieron mociones en cumplimiento de la orden del TPI, anunciando la prueba que utilizarían en la vista donde se consideraría la solicitud de descalificación pendiente. En lo pertinente a los asuntos ante nuestra atención, cabe aquí destacar que el peticionario sometió ante el TPI "prueba documental adicional que será utilizada en la vista", **mas no anunció testigo alguno**.[2]

Superados varios tramites procesales, el TPI celebró la vista según pautada, para considerar la petición de descalificar al Lcdo. Calderón como representante legal, desfilando prueba documental y testifical. En cuanto a esta última, testificaron el Lcdo. Calderón y el licenciado Samuel de la Rosa (Lcdo. de la Rosa) que, por su pertinencia a los señalamientos de error alzados ante nosotros, reseñamos.

En su testimonio, el Lcdo. Calderón dio fe de varios documentos sometidos por la Lcda. Pagán, los cuales incluyeron: correos electrónicos dirigidos al demandante y a la Sra. Gónzalez Ávila; un correo electrónico con una minuta de una conferencia telefónica sostenida con el Lcdo. de la Rosa y; una carta firmada por la Sra. Gónzalez Ávila, dirigida a la recurrida.[3] Además, el Lcdo. Calderón afirmó haber preparado una carta para que la Sra. Gónzalez Ávila la firmara y la hiciera llegar a la Sra. Mónica García relativa a este caso.[4]

---

[2] Entrada No. 60 del Expediente de SUMAC. La documentación adicional incluye: dos cartas dirigidas al Lcdo. de la Rosa y un documento donde el peticionario autorizaba al Lcdo. Calderón a asumir su representación legal.

[3] Ver Transcripción de Prueba Oral en las páginas 24-5, 30, 38, 41 y 43. Cualquier otra referencia a la transcripción se denotará con las siglas TPO.

[4] TPO pág. 43, líneas 19-21.
"P [Lcda. Pagán]: Sí, pero mi pregunta, si usted redactó ese documento para que Priscilla [González] lo firmara. Esa fue mi pregunta.
 R [Lcdo. Calderón]: Por supuesto, por supuesto".

Por su parte, el Lcdo. de la Rosa testificó que siempre estuvo bajo la impresión de que el Lcdo. Calderón representaba a ambos hermanos, y que advino en conocimiento de que ello no era así cuando fue notificado de la moción del Lcdo. Vázquez para asumir la representación de la Sra. González Ávila.[5] Según su testimonio, el Lcdo. Calderón le había manifestado que representaba a ambos en una reunión que tuvieron el 16 de mayo de 2024 por teléfono.[6] A esto añadió que en la referida reunión el Lcdo. Calderón abogaba por y hacía gestiones a favor de la Sra. González Ávila.[7] A preguntas del Lcdo. Calderón, el testigo contestó que:

> No es que lo pensé, es que usted me lo dijo, que usted represen *[sic]*... que sus representados, en plural, cuando hablaba de, en la conversación hablaba de los representados en plural. No singular, José Enrique, no, no. De otra manera, cómo yo iba a pensar que usted no los representaba.[8]

Además, el Lcdo. de la Rosa le contestó (ante otra pregunta) que "mi clienta recibió una carta de Priscilla González a sabiendas de que yo era el abogado de doña Mónica García, y el sobre decía 'Priscilla González y Calderón Law Office'. **Y eso me dio a entender también de que usted representaba a Priscilla**".[9]

Entonces, concluido los testimonios hasta aquí reseñados, el Lcdo. Calderón se dispuso a sentar a su representado, el peticionario, a testificar. No obstante, tal proceder fue objetado por los recurridos, por causa de que dicho testigo no había sido anunciado con antelación a la vista, a pesar de que tal fue la orden expresa del Tribunal. A ello replicó el Lcdo. Calderón que tal testimonio solo sería utilizado para impugnar el vertido por el Lcdo. de la Rosa.

En consecuencia, el Tribunal decidió permitir el examen directo del testigo propuesto, pero *solo dirigido a impugnar el testimonio del Lcdo. de la Rosa.* Con esta determinación sobre el alcance de su testimonio, el Sr. José

---

[5] TPO pág. 61, líneas 18-22.
[6] TPO pág. 48, líneas 16-8.
[7] TPO pág. 48, líneas 19-25; pág. 49, líneas 1-10.
[8] TPO pág. 62, líneas 1-5.
[9] TPO pág. 69, líneas 12-6 (énfasis suplido).

González Ávila solamente pudo afirmar ante preguntas del Lcdo. Calderón, que este no era el abogado de la Sra. González Ávila.[10]

Es así como, el 18 de marzo de 2025, el TPI emitió la *Resolución Interlocutoria* cuya revocación se nos solicita, declarando Ha Lugar la petición de descalificación ante su atención, por tanto, ordenando descalificar al Lcdo. Calderón, e imponiéndole una multa de $1,000 por temeridad.

Inconforme con su descalificación, el Lcdo. Calderón acude ante nosotros alzando los siguientes señalamientos de error:

> **Primer error:** Erró el Tribunal de Primera Instancia al concluir que existió una relación abogado-cliente entre el Lcdo. Calderon Garnier y Priscilla González Ávila sin prueba fehaciente que lo demostrara.
>
> **Segundo error:** Erró el Tribunal de Primera Instancia al invertir indebidamente la carga de la prueba al exigir que el Lcdo. Calderón Garnier refutara un conflicto de interés que nunca fue probado por la parte promovente.
>
> **Tercer error**: Erró el Tribunal de Primera Instancia al excluir el testimonio del Lcdo. Calderon Gariner y el del recurrente, José Enrique González Ávila, impidiendo que pudieran aclarar el contexto y refutar la alegación de conflicto de interés.
>
> **Cuarto error**: Erró el Tribunal de Primera Instancia al imponer una sanción económica de $1,000 al recurrente sin base legal ni evidencia de temeridad.

El 2 de septiembre de 2025, el peticionario sometió un *Alegato Suplementario*.

Habiéndole concedido término para ello, la parte recurrida también acudió ante nosotros, mediante la presentación *Alegato de la Parte Recurrida*.

## II. Exposición de Derecho

### A. Expedición de certiorari

El auto de certiorari es el vehículo procesal discrecional mediante el cual un tribunal de mayor jerarquía puede revisar las determinaciones de

---

[10] TPO pág. 79, líneas 4-7. El intercambio fue como sigue:
"P [Lcdo. Calderón:] Le pregunto, ¿yo soy abogado de Priscilla González?
R [Sr. González Ávila:] No".

un tribunal inferior. *Medina Nazario v. McNeil Healthcare LLC,* 194 DPR 723, 728 (2016); *García v. Padró,* 165 DPR 324, 334-335 (2005). La expedición de un auto de certiorari descansa en la sana discreción del tribunal. Medina Nazario v. McNeil Healthcare LLC, *supra,* pág. 729. Como ha señalado el Tribunal Supremo, el auto de *certiorari* se distingue por "la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos". *Builders et al. v. BBVAPR,* 185 DPR 307, 338. Esta discreción no es irrestricta, sino que se debe ejercer dentro del marco de la razonabilidad. *García v. Asociación,* 165 DPR 311, 321 (2005).

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52, establece las circunstancias bajo las cuales el Tribunal de Apelaciones está facultado para ejercer su discreción y considerar un *certiorari.* Allí se pauta que, como norma general, los foros apelativos podrán revisar determinaciones bajo las Reglas 56 (de remedios provisionales) o 57 (de *injunctions*) de las Reglas de Procedimiento Civil y cuando se recurre de una denegación de una moción dispositiva. En adición, la Regla 52.1 establece unas circunstancias excepcionales que también habilitan la intervención del foro revisor. Estas son:

> [C]uando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Regla 52.1 de Procedimiento Civil, *supra.*

En virtud de lo anterior, para poder ejercitar debidamente nuestra facultad revisora sobre un caso, primeramente, debemos determinar si el asunto del cual se recurre se encuentra dentro de alguna de las materias contempladas en la Regla 52.1, *supra.* De ser así, entonces procede evaluar si a la luz de los criterios enumerados en la Regla 40 del Reglamento del Tribunal de Apelaciones, se justifica expedir el recurso solicitado. In re Aprob. Enmdas. Reglamento TA, 2025 TSPR 42, 215 DPR ___ (2025).[11] Con

---

[11] Esta Regla enumera los siguientes factores:

todo, se ha de considerar que ninguno de los criterios contenidos en la Regla 40 citada es determinante por sí solo para el ejercicio de nuestra jurisdicción. García v. Padró, *supra*, pág. 335, esc. 15.

El Tribunal Supremo ha concluido que la descalificación de un abogado es revisable mediante el recurso de certiorari, razonando que ubica dentro de las circunstancias excepcionales descritas en la Regla 52.1, *supra. Job Connection Center v. Econo*, 185 DPR 582 (2012). "Analizadas las repercusiones que pudiera ocasionar el no reconocer el derecho de una parte a revisar las órdenes de descalificaciones, resolvemos que éstas son revisables de acuerdo con la Regla 52.1 **ya que esperar a una apelación constituiría un fracaso irremediable a la justicia**". Íd. en la pág. 601 (énfasis suplido). Ver también *ORIL v. El Farmer*, 204 DPR 229 (2020) (confirmando la correctitud del análisis de *Job Connection v. Econo* y aplicándolo al contexto administrativo) y *Torres Alvarado v. Madera Atiles*, 202 DPR 495, 504-5 (2019).

### B. La descalificación de abogado

El Código de Ética Profesional, 4 LPRA Ap. IX, sirve como un cuerpo normativo dirigido a establecer las pautas mínimas que deben guiar a los abogados en el desempeño de su profesión. *In re Nogueras Cartagena*, 150 DPR 667, 674 (2000). Este prescribe un ordenamiento que regula las interacciones de los abogados con los demás miembros de la sociedad con miras a salvaguardar la integridad y altitud de la profesión. Íd.

---

A. Si el remedio y la disposición de la decisión recurrida a diferencia de sus fundamentos, son contrarios a derecho.
B. Si la situación de hechos planteada es la más indicada para el análisis del problema.
C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberá ser elevados, o de alegatos más elaborados.
E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
F. Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Por su parte, la Regla 9.3 de las Reglas de Procedimiento Civil, *supra,* establece que un tribunal, en el ejercicio de su poder inherente de supervisar la conducta de los miembros de la profesión legal que postulan ante sí, puede descalificar a un abogado que incurra en conducta que constituya un obstáculo para la sana administración de la justicia o que infrinja sus deberes hacia el tribunal, sus representados o compañeros abogados. *Job Connection Center v. Sups. Econo,* supra, pág. 596.

Al ser la moción de descalificación una medida preventiva, no es necesario que se aporte prueba sobre una violación ética para que proceda. En estos casos, la apariencia de impropiedad será utilizada para resolver cualquier duda que surjan sobre posible conflicto de intereses, en favor de la descalificación. *Liquilux Gas Corp. v. Berríos,* 138 DPR 850, 864 (1995).

Los tribunales pueden utilizar la descalificación, además, como mecanismo para asegurar la adecuada marcha de un litigio. Basados en el deber de mantener el orden y control de los procedimientos que se ventilan ante ellos, los tribunales inferiores tienen la facultad de descalificar abogados para evitar actos disruptivos de éstos. Dicho de otro modo, al manejar los procedimientos en un caso, el juez tiene la potestad de descalificar a un abogado si ello resulta necesario para el logro del objetivo primordial de todo tribunal: la solución justa, rápida y económica de los pleitos. *Véase* Regla 1 de Procedimiento Civil, *supra.* Del mismo modo, el juez puede denegar una solicitud de descalificación presentada por una parte adversa, cuando entienda que ella se ha interpuesto como una táctica dilatoria del procedimiento. *Meléndez Vega v. Caribbean Intern. News,* 151 DPR 649, 661 (2000). Así pues, la utilización del mecanismo de la descalificación no se limita a evitar violaciones al Código de Ética Profesional, sino que también sirve para evitar actos disruptivos de los abogados durante el trámite de un pleito.

En suma, al examinar en lo sustantivo la procedencia de una descalificación, procede hacer un análisis de la totalidad de las

circunstancias para valorar si la actuación del abogado constituye un acto disruptivo o si tiene el potencial de desembocar en una violación de los cánones del Código de Ética Profesional. Meléndez Vega, *supra,* en las pág. 662.

En lo que respecta a la determinación de derecho que hace el tribunal de instancia al descalificar, se trata de una decisión impregnada del alto grado de discreción que tiene dicho foro en el manejo procesal del caso. Íd. en la pág. 664. Como es sabido, los tribunales apelativos no debemos, con relación a determinaciones interlocutorias discrecionales procesales, sustituir nuestro criterio por el ejercicio de discreción del tribunal de instancia, salvo cuando dicho foro haya incurrido en arbitrariedad o craso abuso de discreción. Íd.

Por otra parte, en *Job Connection Center v. Sups. Econo, supra,* el alto foro añadió a lo ya dicho, que estamos llamados a revisar la decisión sobre la descalificación efectuada por el tribunal *a quo,* si se demuestra que hubo craso abuso de discreción, que actuó con prejuicio o parcialidad, que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que la intervención en esa etapa evitará un perjuicio sustancial.

Cónsono con lo anterior, en la misma Opinión se dispuso que la descalificación es un remedio que no debe imponerse ligeramente y solo debe proceder cuando sea estrictamente necesario, por considerarse un remedio drástico que debe ser evitado "si existen medidas menos onerosas que aseguren la integridad del proceso judicial y trato justo a las partes". *Job Connection Center v. Sups. Econo, supra,* pág. 596-7. "Aunque en casos civiles el derecho a la libre selección de representación legal no es un derecho fundamental, sí es un derecho que no debe ser afectado si no existe real justificación para ello". Íd. El reemplazar un abogado que le haya dedicado tiempo considerable a un caso podría tener un efecto perjudicial

en la forma que en que este se maneje. Íd. A estos efectos, el tribunal deberá sopesar el efecto adverso que la descalificación de la representación legal pueda tener sobre los derechos de las partes a un juicio justo e imparcial. Íd.

Cuando una parte solicita la descalificación de un representante legal, la mera presentación de una moción a esos efectos no conlleva automáticamente la concesión de la petición en cuestión. En cambio, el tribunal deberá hacer un análisis de la totalidad de las circunstancias a la luz de los siguientes factores:

> [1] [S]i quien solicita la descalificación tiene legitimación activa para invocarla; [2] la gravedad de la posible violación ética involucrada; [3] la complejidad del derecho o los hechos pertinentes a la controversia y la pericia de los abogados implicados; [4] la etapa de los procedimientos en que surja la controversia sobre descalificación y su posible efecto en cuanto a la solución justa, rápida y económica del caso, y [5] el propósito detrás de la descalificación, es decir, si la moción está siendo utilizada como mecanismo para dilatar los procedimientos. Job Connection Center v. Sups. Econo, *supra*, páginas 597-8.

Previo a determinar si procede la descalificación solicitada, el tribunal le deberá brindar la oportunidad al representante legal, cuya descalificación está siendo solicitada, para que se exprese y presente prueba en su defensa. *Otaño v. Vélez*, 141 DPR 820, 828 (1996). Esto implica que "tenga al menos la oportunidad de ser oído y poder presentar prueba en su defensa". Íd.

### C. El Canon 21 y el deber de lealtad

El Canon 21 del Código de Ética Profesional, *supra*, le impone al abogado un deber de lealtad completa, que se compone de dos aspectos: (1) el ejercicio de un criterio profesional independiente y desligado de sus propios intereses, y (2) la obligación de confidencialidad absoluta ante los secretos y confidencias obtenidas durante la vigencia de la relación abogado-cliente. *Liquilux Gas Corp. v. Berríos*, 138 DPR 850, 857-8 (1995); *Robles Sanabria, Ex parte*, 133 DPR 739, 745 (1993).

El primer aspecto del deber de lealtad completa proscribe que un abogado represente a un cliente cuyos intereses estén reñidos con los suyos propios. *In re Belén Trujillo*, 126 DPR 743, 752 (1990). El segundo aspecto del deber de lealtad consiste en el deber de no revelar confidencias que su cliente haya compartido, lo cual a su vez prohíbe que un abogado incurra en una representación simultánea o sucesiva adversa. *In re Reyes Coreano*, 190 DPR 739, 754 (2014); *Liquilux Gas Corp. v. Berríos Zaragoza*, supra, pág. 859. Ello no quiere decir que un abogado no pueda representar simultánea o sucesivamente a dos clientes en asuntos similares; sólo proscribe que represente a un cliente en una controversia que esté sustancialmente relacionada a la de otro cliente actual o anterior, cuando los intereses de ambos clientes sean adversos. *In re Aponte Duchesne*, 191 DPR 247, 255-7 (2014).

Un abogado queda impedido de asumir representación simultánea o sucesiva de dos clientes, independientemente de la aprobación otorgada por éstos, cuando entre ambas representaciones exista una relación sustancial que implique intereses adversos. *Otano v. Vélez*, 141 DPR 820, 826 (1996).

La relación sustancial debe ser más que una mera coincidencia de los sujetos involucrados o una mera coincidencia temática entre el asunto general de una representación actual y una pasada. *In re Aponte Duchesne*, supra, pág. 257. "[N]ada existe en el referido Canon 21 que vede la representación sucesiva o simultánea de dos clientes por su abogado ante la total ausencia de un posible conflicto de intereses entre ambas representaciones". Otano v. Vélez, *supra*, pág. 827.

**D. Inicio de la relación abogado-cliente y el Canon 26**

"La relación abogado-cliente es una relación sui géneris que responde en gran medida a las inexorables exigencias éticas muy particulares de esta profesión". *In re Santiago Ríos*, 172 DPR 802, 816 (2007); *In re Belén*

*Trujillo*, 126 DPR 743, 754 (1990). Por su naturaleza particular, no puede concluirse que surge una relación abogado-cliente exclusivamente con el perfeccionamiento del contrato de servicios profesionales, sino que "existen variadas maneras en las que puede nacer una relación abogado-cliente". Sigfrido Steidel Figueroa, *Ética del Abogado y Responsabilidad Disciplinaria*, Ediciones SITUM, 2016, pág. 151. Es con la comprensión de esta compleja relación que el Supremo ha afirmado que la relación abogado-cliente "comienza cuando el cliente acude al abogado a requerir sus servicios profesionales **para que lo asesore** o le represente en algún asunto". *In re Pietri Torres* 201 DPR 583, 600 (2018).

Es relevante para esta discusión el contenido del Canon 26, el cual pauta en parte que "[n]ingún abogado está obligado a representar a determinado cliente y es su derecho el aceptar o rechazar una representación profesional". Canon 26 del Código de Ética Profesional, *supra*. De este mismo principio surge la obligación de los abogados de ser claros y precisos en cuanto a si aceptan o no representar a una persona. *In re Mondríguez Rivera*, 205 DPR 824, 831 (2020). Si la conducta del abogado genera en un cliente prospectivo la expectativa real de que este primero accedió a acoger su representación legal, queda el abogado obligado a descargar su labor diligente y eficazmente. *In re Acosta Grubb*, 119 DPR 595, 603 (1987). Es por ello que el abogado no puede excusarse de responsabilidad "si por sus actos induce al cliente a creer que ha aceptado su representación". *In re Agostini Torres*, 103 DPR 910, 911 (1975).

### E. La revisión de las determinaciones de hechos por el Tribunal de Apelaciones

En nuestro ordenamiento jurídico, los foros apelativos debemos otorgar "gran deferencia a las determinaciones de hechos, la apreciación de la prueba testifical y las adjudicaciones de credibilidad que hacen los tribunales de primera instancia". *Fernández Martínez y otros v. RAD-MAN San Juan III-D*, 208 DPR 310, 338 (2021); *SLG Torres Matundan v. Centro*

*Patología*, 193 DPR 920, 933 (2015); *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 770–1 (2013). Por tanto, como norma general, se prohíbe que un tribunal apelativo sustituya las determinaciones de hechos de un foro inferior. RAD-MAN San Juan III-D, *supra*; SLG Torres Matundan v. Centro Patología, *supra*.

De gran relevancia resultan las expresiones del Tribunal Supremo en *Dávila Nieves v. Meléndez Marín, supra*, pág. 770, al afirmar que "[c]omo tribunal apelativo, no celebramos juicios plenarios, no presenciamos el testimonio oral de los testigos, no dirimimos credibilidad y no hacemos determinaciones de hechos. Esa es la función de los tribunales de instancia".

De estas consideraciones sigue la norma que los foros apelativos no deben intervenir con el ejercicio de discreción de los foros de instancia, salvo que quede demostrado un uso excesivo de este, "o que el tribunal actuó con prejuicio o parcialidad, o se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo; y que la intervención del foro apelativo en la etapa en que se trae el asunto ante su consideración evitaría un perjuicio sustancial". *Lluch v. España Services Sta.*, 117 DPR 729, 745 (1986).

Esto quiere decir que un tribunal revisor podrá intervenir con la apreciación de la prueba cuando de un examen detenido de la misma quede convencido de que "el juzgador descartó injustificadamente elementos probatorios importantes o que fundamentó su criterio únicamente en testimonios de escaso valor, o inherentemente improbables o increíbles". *C. Brewer P.R., Inc. v. Rodríguez*, 100 DPR 826, 830 (1972).

## F. Temeridad

La Regla 44.1 (d) de Procedimiento Civil, *supra*, concede a los tribunales la facultad de imponer el pago de una suma por concepto de honorarios de abogado cuando una parte o su abogado ha actuado con

temeridad o frivolidad durante el proceso litigioso. El propósito principal de esta regla es establecer una penalidad a un litigante perdidoso que, por su "terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte a innecesariamente asumir molestias, gastos, trabajo e inconveniencias de un pleito", afectando a su vez el buen funcionamiento y la administración de la justicia. *Meléndez Vega v. El Vocero de Puerto Rico*, 189 DPR 123, 240 (2013); *Vega v. Luna Torres*, 126 DPR 370, 375 (1990). Por tanto, a tenor con referida regla, si el Tribunal de Primera Instancia determina que hubo temeridad, vienen compelidos a imponer honorarios. Meléndez Vega, *supra*, pág. 211.

El Tribunal Supremo de Puerto Rico ha señalado que el concepto de temeridad es amplio. *Blás v. Hosp. Guadalupe*, 146 DPR 267, 334 (1998). Dicha conducta temeraria ha sido descrita como aquella que prolonga innecesariamente o que obliga que la otra parte incurra en gestiones evitables. *Marrero Rosado v. Marrero Rosado*, 178 DPR 476, 504 (2010). Algunos ejemplos de conducta temeraria que han sido reconocidos son:

> (1) [C]ontestar una demanda y negar responsabilidad total, aunque se acepte posteriormente; (2) defenderse injustificadamente de la acción; (3) creer que la cantidad reclamada es exagerada y que sea esa la única razón que se tiene para oponerse a las peticiones del demandante sin admitir francamente su responsabilidad, pudiendo limitar la controversia a la fijación de la cuantía a ser concedida; (4) arriesgarse a litigar un caso del que se desprendía prima facie su responsabilidad, y (5) negar un hecho que le conste es cierto a quien hace la alegación. Blas v. Hospital Guadalupe, *supra*, págs. 335-6. Ver también *P.R. Oil v. Dayco*, 164 DPR 486, 511 (2005).

Sin embargo, la imposición de honorarios de abogados no opera de forma automática, pues el hecho de que una parte prevalezca en un pleito no es óbice para la concesión de estos. "No puede penalizarse a un litigante que utiliza las vías judiciales para vindicar un derecho por el simple hecho de no haber prevalecido en su acción". Meléndez Vega v. El Vocero de P.R., *supra*, pág. 214 (citando a *Santos Bermúdez v. Texaco P.R., Inc.*, 123 DPR 351, 355 (1941)). Igual resultado se impone cuando la parte concernida

responde a lo que resulta ser una apreciación errónea del derecho o una desavenencia honesta en cuanto a la aplicación del derecho, especialmente cuando no existan precedentes vinculantes. *Maderas Tratadas v. Sun Alliance et al.*, 185 DPR 880, 926 (2012).

Por último, cabe mencionar que solo se intervendrá con la determinación de temeridad por parte del TPI si media un claro abuso de discreción. Maderas Tratadas v. Sun Alliance et al., *supra*, pág. 926 (2012); *Andamios de P.R. v. Newport Bonding*, 179 DPR 503, 520 (2010).

**III. Aplicación del Derecho a los hechos**

a.

Según adelantamos, en *Job Connection Center v. Econo* quedó claramente establecido que, de conformidad con la Regla 52.1 de Procedimiento Civil, el vehículo procesal adecuado para revisar una determinación del TPI sobre descalificación de abogado es el recurso de certiorari. Esto por tratarse de una situación en que esperar la posible interposición de una apelación conllevaría un fracaso de la justicia. Además, sopesados los criterios establecidos en la Regla 40 del Reglamento para ejercer nuestra discreción al expedir un recurso de *certiorari*, nos resulta evidente que nos encontramos en una etapa idónea para dilucidar la controversia sobre descalificación alzada.

b.

En el primer señalamiento de error se plantea que el TPI incidió al determinar que existió una relación abogado-cliente entre el abogado cuya descalificación se solicitó, el Lcdo. Calderón, y su representada, la Sra. González Ávila.

No nos persuade. Adelantamos que, al así determinar, pesa en nuestro juicio el hecho de que para dirimir tal controversia el TPI celebró una vista evidenciaria, en la que tuvo la oportunidad de sopesar evidencia tanto documental como testifical, estando este foro intermedio en franca

desventaja al valorar la segunda de estas. En este sentido, no avistamos ninguna de las circunstancias que justificarían nuestra intervención con la valoración de la prueba que desfiló ante los ojos del foro recurrido, en ausencia de pasión, prejuicio, parcialidad o error manifiesto.

En cualquier caso, respecto a la prueba documental, de esta surge que, en efecto, el Lcdo. Calderón realizó gestiones a favor de la Sra. González Ávila. Nos referimos a la cadena de comunicaciones que inició con un correo electrónico de parte del Lcdo. Calderón hacia el Lcdo. de la Rosa, presentándose como el abogado del peticionario y solicitando unos documentos relacionados a una petición que había hecho su clienta—la Sra. García—al tribunal.[12] Así, registran los documentos que el 16 de mayo de 2024, ambos licenciados sostuvieron una reunión por la vía telefónica. El contenido de lo discutido en esta reunión consta en una minuta preparada por el Lcdo. Calderón que llevó por título *Memorando de Conferencia Telefónica Referente a Inventario de la Sucesión José Guillermo González Ávila y Composición de Junta de Directores de Gurabo Farms, Inc.*[13]

Cabe notar de igual forma que, surge de las notas en dicha Minuta, que el Lcdo. Calderón estaba obrando tanto en favor de la Sra. González Ávila, como del peticionario. Ello queda evidenciado cuando allí quedó se plasmado que "Calderón expuso que la señorita Priscilla González y su hermano José Enrique González son dueños del 50% de las acciones de la corporación desde la incorporación. Señaló a Priscilla para ingresar como secretaria y tesorera de la Junta de directores". También compartió que el padre de estos tenía la expectativa de que Priscilla eventualmente se quedaría con el negocio, y que esta conocía mejor la industria y tenía "las conexiones".

En la misma tónica, el 17 de mayo de 2024, el Lcdo. Calderón le compartió al Lcdo. de la Rosa la referida minuta y le hizo unos comentarios

---

[12] Entrada 60 del Expediente, Anejo 1.
[13] Entrada 59 del Expediente, Anejo 4.

en cuanto a una posición a la cual se nombraría a la Sra. González Ávila, indicándole la compensación que acompañaría el nombramiento.[14] Quedó omitido de este comunicado el peticionario, el Sr. José González Ávila.

El mismo día, el Lcdo. Calderón remitió a la Sra. González Ávila y al peticionario copia de los documentos que este le había enviado al Lcdo. de la Rosa.[15] Allí el Lcdo. Calderón les indica que "[p]referiría una reunión entre los tres *para enfocar una estrategia donde ambos estén de acuerdo*". Culmina el correo electrónico indicándoles que "espera la reacción de ambos" y que el asunto del comunicado era apremiante.

A continuación, el 21 de mayo de 2024, el Lcdo. Calderón vuelve a escribirles por correo electrónico, compartiéndoles documentos relacionados a las particiones de unas sucesiones, les indica que debe repasar los documentos y ofrece asesoría a ambos ("Tengan la oportunidad de revisarla para discutirla. Si tienen preguntas háganla por escrito").[16] Culmina diciendo "[l]uego discutimos el paso a seguir con la llamada de Priscilla a Monica *[sic]* García". Pasados dos días, el 23 de mayo de 2024, el Lcdo. Calderón les remitió un correo de seguimiento en donde les pidió que le indicaran si habían podido revisar los documentos previamente compartidos.[17] Además, señaló que deberán "tener una conferencia *para discutir el curso a seguir*". Terminó suplicando, "[p]or favor, confirmen si están *preparados para otra videoconferencia*".

Finalmente, de los documentos se tiene una carta firmada por la Sra. González Ávila, dirigida a la recurrida.[18] El sobre donde la carta se encontraba contiene la información de la oficina del Lcdo. Calderón. Luego surgió en el testimonio que esta carta había sido redactada por el Lcdo. Calderón para que la Sra. González Ávila la firmara.

---

[14] Íd.
[15] Entrada 59 del Expediente, Anejo 1.
[16] Entrada 59 del Expediente, Anejo 2.
[17] Entrada 59 del Expediente, Anejo 3.
[18] Entrada 59 del Expediente, Anejo 5.

Adicional a la prueba documental reseñada, como ya hemos dicho, el TPI contó con la prueba oral desfilada en la vista celebrada el 17 de marzo de 2024, ya reseñada. De allí cabe enfatizar que el testimonio del Lcdo. de la Rosa fue que el Lcdo. Calderón se presentó como el abogado tanto del peticionario, como de la Sra. González Ávila y que, por medio de sus representaciones, le hizo pensar que era el abogado de la Sra. González Ávila.

Aunque reiteremos, la revisión de la prueba que sopesó el TPI, y nos señala el peticionario, en modo alguno cumple el propósito de subvertir la deferencia que debemos mostrar ante el ejercicio valorativo integral de la prueba documental y testifical realizado por el foro *a quo*. De aquí que insistamos en que no apreciemos error en la apreciación del Tribunal al determinar la controversia medular sobre si existió una relación abogado-cliente entre el Lcdo. Calderón y la Sra. González Ávila previa al caso ante nuestra consideración. Particularmente, el contenido de las comunicaciones entre estos refuerza el dictamen recurrido en términos de que el Lcdo. Calderón estaba asesorando a la Sra. González Ávila en asuntos relacionados a la Sucesión José Guillermo González Ávila, y que realizó actos a favor de esta. Según citamos en la exposición de derecho, no hace falta una representación ante un tribunal, ni un servicio de contrato, para que advenga a la vida una relación abogado-cliente.

c.

En el segundo señalamiento de error se le imputa al TPI haber invertido la carga de la prueba. No coincidimos. Por el contrario, la parte que solicitó la descalificación, es decir, la promovente aquí recurrida, sometió evidencia documental y sentó a declarar testigos para probar las causas de su petición. A *contrario sensu*, la peticionaria se conformó con presentar un documento y un testimonio de impugnación. Que el TPI tomara la prueba y le hubiese concedido la credibilidad que le pareció meritoria resulta el curso ordinario del juzgador de los hechos, a quien

corresponde dirimir credibilidad para establecer los hechos medulares. En definitiva, en modo alguno juzgamos que aconteciera la presunta inversión de la prueba, sino que afirmamos lo contrario, la parte promovente de la descalificación se ocupó de presentar ante el TPI aquella prueba que respaldara sus alegaciones.

d.

Entonces, a través del tercer señalamiento de error se aduce que el TPI incidió al excluir los testimonios del Lcdo. Calderón Garnier y del peticionario, José Enrique González Ávila.

Sobre esto, la presunta exclusión del testimonio del Lcdo. Calderón, simplemente no observamos que esto hubiere ocurrido. Nótese que, de la Transcripción de la Prueba Oral (TPO) se observa que el Lcdo. Calderón fungió de testigo de la abogada de la Sra. González Ávila. Además, como parte de este señalamiento, el Lcdo. Calderón alega que el TPI erró al no considerar la carta fechada del 13 de mayo de 2024, el cual consta como el anejo número 1 de la Entrada Núm. 60 del Expediente. No obstante, de la prueba surge que, aunque el Lcdo. Calderón introdujo dicha carta mientras contrainterrogaba al Lcdo. de la Rosa, este no solicitó que la carta se admitiera como evidencia. Por lo anterior, la carta no entró como prueba y el TPI no la consideró al momento de tomar su decisión.[19] Repasada la TPO, observamos que en efecto así fue como ocurrió.[20]

En segundo lugar, el peticionario asevera que el TPI incidió al haber determinado excluir su propio testimonio (dígase, el testimonio del Sr. José E. González Ávila). Contrario a ello, surge del expediente ante nuestra consideración que el Lcdo. Calderón no anunció de manera oportuna que presentaría ningún testigo. Por tanto, el TPI actuó dentro de su amplia

---

[19] Dijo el TPI en su resolución: "Destacamos que durante el contrainterrogatorio a Samuel De la Rosa Ortiz el Lcdo. Calderón Garnier hizo referencia a una carta fechada el 13 de mayo de 2024, pero no solicitó que ésta se admitiera y marcara como prueba, por lo que este tribunal no la tomó en consideración". Entrada 69 del Expediente, *Resolución Interlocutoria*, pág. 3.

[20] TPO pág. 52. Allí el Lcdo. Calderón terminó con la carta y le pidió al TPI que pasaran a otro documento.

discreción de conducir los trámites ante su consideración, al no permitir el testimonio de un testigo no anunciado, a pesar de haber concedido expresa oportunidad a la parte de hacerlo antes de que se celebrase la vista. *Rivera Gómez v. Arcos Dorados Puerto Rico, Inc.*, 212 DPR 194, 203-4 (2023).[21] Es de ver que, aun sin haber sido anunciado, el TPI permitió el testimonio del peticionario, aunque con el limitado propósito de impugnar el testimonio del Lcdo. de la Rosa. Claro, que tal propósito no hubiese sido cumplido, (lograr la impugnación del testimonio del Lcdo. de la Rosa), no puede atribuirse a una actuación arbitraria ni abusiva del TPI que nos coloque en posición de afectar el resultado alcanzado. Lo cierto es que el foro recurrido le concedió la oportunidad al peticionario de someter prueba para refutar la petición de descalificación, y este se limitó a ofrecer la descrita. El error no fue cometido.

e.

Finalmente, el peticionario alega que en este caso no procedía la imposición de la sanción económica por temeridad. Coincidimos.

Es sabido que el TPI goza de amplia discreción para determinar temeridad de una parte e imponer la sanción que juzgue corresponda, juicio que estamos llamados a respetar, salvo en la presencia de abuso de discreción. No obstante, también resulta necesario reconocer que, en casos donde se peticiona la descalificación de un abogado, la jurisprudencia ha establecido sin ambages el derecho de la parte contra quien se solicita la descalificación del abogado a ser oído y presentar prueba a su favor. Esto porque, entre otros, "aunque en casos civiles el derecho a la libre selección de representación no es un derecho fundamental, sí es un derecho que no debe ser afectado si no existe real justificación para ello". *Job Conncection Center v. Sups. Econo*, supra, pág. 596.

---

[21] Aunque la jurisprudencia hace referencia a la facultad que tienen los tribunales con relación a la prueba que se desfile en el juicio, los principios son igual aplicables a escenarios como este donde: el TPI emita una orden solicitando el anuncio de prueba y celebre una vista para tomar una determinación basada en la prueba a desfilarse.

El fundamento para la imposición de este caso fue que, al Lcdo. Calderón insistir en defender su posición "requirió que este tribunal invirtiera tiempo y recursos en la celebración de una vista que pudo evitarse".[22] Sin embargo, fue más bien el desfile de la prueba el que colocó al TPI en verdadera posición de advertir el conflicto de interés aducido e intervenir resueltamente con el derecho de la parte peticionaria a elegir su representación legal. Además, tampoco apreciamos en la conducta exhibida por esta parte aquella que la jurisprudencia destaca como base para la imposición de sanciones, allí donde los procesos se alargan innecesariamente, o donde una parte se aferra irrazonablemente a una posición. *Marrero Rosado, supra; Dayco, supra; Blas v. Hospital Guadalupe, supra.* El hecho de que, luego de haber ejercido su facultad de refutar la solicitud de descalificación, resultara perdidoso no convierte su conducta en una temeraria. "*No puede penalizarse a un litigante que utiliza las vías judiciales para vindicar un derecho por el simple hecho de no haber prevalecido en su acción*". *Meléndez Vega v. El Vocero de P.R.*, *supra*, pág. 214.

Por ello, concluimos que el TPI abusó de su discreción al imponerle una sanción de $1,000 al Lcdo. Calderón.

## IV. Parte dispositiva

Por los fundamentos antes expuestos, se expide el auto de *certiorari* y se modifica la resolución recurrida a los solos fines de revocar la imposición de la sanción económica de $1,000, de modo que, dejada esta sin efecto, Confirmamos la descalificación recurrida.

Lo pronunció y manda el Tribunal y lo certifica su Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[22] Entrada 69 del Expediente, *Resolución Interlocutoria*, pág. 12.